UNITED STATES of America,
Plaintiff–Appellee,

v.

Juan CERON–SANCHEZ, aka Anastacio Gonzalez–Organista; aka Francisco Campos–Boimilla; aka Joel Cruz–Ramirez, Defendant–Appellant.

No. 99–10284

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 1, 2000.

Filed July 26, 2000

Jose de Jesus Rivera, Tim Holtzen, Georgia B. Ellexson, U.S. Attorney's Office, Phoenix, AZ, for plaintiff-appellee.

Atmore L. Baggot, Apache Junction, AZ, for defendant-appellant.

Before: WOOD, Jr.,[1] KLEINFELD, and GRABER, Circuit Judges.

WOOD, Circuit Judge:

■ On January 26, 1999, defendant-appellant Juan Ceron–Sanchez entered a plea of guilty to one count of Reentry After Deportation in violation of subsections (a) and (b)(2) of 8 U.S.C. § 1326.[2] On May 27, 1999, Ceron–Sanchez was sentenced to 60 months imprisonment followed by three years of supervised release. Ceron–Sanchez appeals, challenging the district court's computation of his sentence.

## I. BACKGROUND

Ceron–Sanchez is a citizen of Mexico. On February 28, 1996, Ceron–Sanchez pleaded guilty to Attempted Aggravated Assault with a Deadly Weapon/Dangerous Instrument in violation of ARIZ. REV. STAT. §§ 13–1001 and 13–1204(A)(2) and (B), a class four felony, in the Superior Court of Arizona, Pima County, for conduct relating to an automobile accident.[3] The accident occurred on December 17, 1995. Ceron–Sanchez was driving southbound on Interstate 19 in Arizona when the vehicle he was driving rear-ended a van that was carrying two people. A witness reported that prior to the accident, Ceron–Sanchez was driving at an excessive rate of speed, approximately 85 miles per hour, and was passing vehicles while driving in the emergency lane. The impact of the accident caused the van to turn over onto its roof. Its two passengers were taken to a hospital where they were treated and released. Their hospital bills totaled $281.65. Both the van and the vehicle that Ceron–Sanchez were driving were totaled. Following the accident, Ceron–Sanchez fled into the

---

1. The Honorable Harlington Wood, Jr., United States Circuit Judge for the Seventh Circuit, sitting by designation.

2. We recognize that 8 U.S.C. § 1326(b)(2) constitutes a sentencing enhancement and not a separate offense. *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). However, because Ceron–Sanchez was charged with and pleaded guilty to only one count, the fact that, in its judgment, the district court referenced

§ 1326(b)(2) in addition to § 1326(a) does not present a problem on appeal.

3. This was not Ceron–Sanchez's first encounter with the legal system. At the time of his accident, Ceron–Sanchez had two prior Arizona convictions for driving under the influence of alcohol, one prior trespassing conviction, and a prior conviction for felony theft of a vehicle. Ceron–Sanchez had been deported from the United States in both 1994 and 1995.

desert. When he was located, he registered a .137% blood alcohol concentration. On March 27, 1996, Ceron–Sanchez was sentenced on the attempted aggravated assault conviction to two-and-one-half years imprisonment in the Arizona Department of Corrections. He was released from custody on February 22, 1998 and deported from the United States that same day.[4]

On November 25, 1998, the Immigration and Naturalization Service ("INS") conducted a routine record check which revealed that Ceron–Sanchez was being held by the Maricopa County Sheriff's Office in Phoenix, Arizona after being arrested for possession of drug paraphernalia. On December 1, 1998, in an interview with an INS agent, Ceron–Sanchez admitted that he was in the United States illegally. On December 8, 1998, Ceron–Sanchez was charged by criminal complaint in the United States District Court for the District of Arizona with one count of Reentry After Deportation in violation of subsections (a) and (b)(2) of 8 U.S.C. § 1326, and on December 22, 1998, the prosecution filed an information containing the same charge. Ceron–Sanchez pleaded guilty to the information without a plea agreement on January 26, 1999.

Ceron–Sanchez was sentenced on May 27, 1999. The district judge assigned Ceron–Sanchez a base offense level of 8 under § 2L1.2(a) of the United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines"). The court then increased Ceron–Sanchez's offense level by 16 under U.S.S.G. § 2L1.2(b)(1)(A) which applies if the defendant previously was deported after a criminal conviction for an aggravated felony. The court then subtracted three levels for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b), resulting in a total adjusted offense level of 21. Ceron–Sanchez's criminal history category was IV, which placed him in a Guidelines range of 57 to 71 months imprisonment. Noting that Ceron–Sanchez had been deported four times previously, the judge sentenced Ceron–Sanchez to 60 months imprisonment to be followed by three years of supervised release.

## II. ANALYSIS

As we noted in *United States v. Sandoval–Barajas*, 206 F.3d 853, 854 (9th Cir.2000), under U.S.S.G. § 2L1.2 "[s]entencing is much harsher for an alien found in the United States after deportation if the conviction preceding his deportation was for an 'aggravated felony.'" Ceron–Sanchez argues that his March 27, 1996 attempted aggravated assault conviction does not constitute an aggravated felony under the Guidelines, and therefore, the district court erred in increasing his base offense level by 16 levels under U.S.S.G. § 2L1.2(b)(1)(A). Ceron–Sanchez also challenges the United States Sentencing Commission's authority to adopt U.S.S.G. § 2L1.2(b)(1)(A). We address each argument in turn.

Under U.S.S.G. § 2L1.2(b)(1)(A), the district court must increase a defendant's base offense level by 16 levels if the defendant previously was deported after a criminal conviction for an aggravated felony. "'Aggravated felony,' is defined at 8 U.S.C. § 1101(a)(43)." U.S.S.G. § 2L1.2, comment. (n.1). Under subsection (F) of 8 U.S.C. § 1101(a)(43), the term "aggravated felony" includes a "crime of violence" as defined in 18 U.S.C. § 16 for which the term of imprisonment was at least one year. A "crime of violence" is defined as

(a) an offense that has as an element the use, attempted use or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may

---

4. Following his February 1998 deportation, Ceron–Sanchez was arrested in June 1998 by the Phoenix Police Department for misconduct involving a weapon based on an incident in which Ceron–Sanchez was caught riding a bicycle while carrying a .22 caliber rifle concealed under a blanket on the handlebars. He was deported in July 1998.

be used in the course of committing the offense. 18 U.S.C. § 16. Under 8 U.S.C. § 1101(a)(43)(U), an attempt or conspiracy to commit any of the offenses described in § 1101(a)(43) also qualifies as an aggravated felony.

■ Ceron–Sanchez asserts that his attempted aggravated assault conviction was based on reckless conduct and, therefore, does not constitute a crime of violence for aggravated felony purposes.[5] We review *de novo* to determine whether the aggravated felony provision is applicable. *United States v. Estrada–Torres*, 179 F.3d 776, 781 (9th Cir.1999). "In deciding whether a defendant committed an aggravated felony, 'the issue is not whether [the defendant's] actual conduct constituted an aggravated felony, but whether the *full range of conduct* encompassed by [the statute the defendant violated] constitutes an aggravated felony.'" *Id.* (quoting *United States v. Lomas*, 30 F.3d 1191, 1193 (9th Cir.1994) (emphasis added)); *see also Sandoval–Barajas*, 206 F.3d at 856.

■ The judgment in the March 27, 1996 case indicates that Ceron–Sanchez was convicted under ARIZ. REV. STAT. §§ 13–1001 and 13–1204(A)(2) and (B). Section 13–1001 is Arizona's general attempt statute, and § 13–1204(B) sets the class of felony for the various types of aggravated assaults listed in § 13–1204(A). Therefore, we focus our analysis on the substantive provision of Ceron–Sanchez's conviction, § 13–1204(A)(2), which provides:

> A. A person commits aggravated assault if such person commits assault as defined in § 13–1203 under any of the following circumstances:
>
> . . .
>
> 2. If such person uses a deadly weapon or dangerous instrument.

ARIZ. REV. STAT. § 13–1204(A)(2). Assault is defined under § 13–1203 as follows:

> A. A person commits assault by:
>
> 1. Intentionally, knowingly or recklessly causing any physical injury to another person; or
>
> 2. Intentionally placing another person in reasonable apprehension of imminent physical injury; or
>
> 3. Knowingly touching another person with the intent to injure, insult or provoke such person.

ARIZ. REV. STAT. § 13–1203(A). A "dangerous instrument" is "anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury." ARIZ. REV. STAT. § 13–105(8).

■ The government argues that ARIZ. REV. STAT. § 13–1204(A)(2) qualifies as a crime of violence under both subsection (a) and (b) of 18 U.S.C. § 16. Under 18 U.S.C. § 16(a), we must determine whether aggravated assault with a deadly weapon or dangerous instrument qualifies as "an offense that has as an element the use, attempted use or threatened use of physical force against the person or property of another." This court has recently held "that 'the force necessary to constitute a crime of violence [ ] must actually be violent in nature.'" *Ye v. INS*, 214 F.3d 1128, 1133 (9th Cir.2000) (quoting *Solorzano–Patlan v. INS*, 207 F.3d 869, 875 n. 10 (7th Cir.2000)). BLACK'S LAW DICTIONARY defines "physical force" as "[f]orce applied to the body; actual violence." Black's Law Dictionary 1147 (6th ed.1990); *see also Solorzano–Patlan*, 207 F.3d at 875 n. 10. A conviction under § 13–1203(A)(1) may be based on reckless conduct, which Ceron–Sanchez argues does not constitute violent conduct. However, in order to support a conviction under § 13–1203(A)(1), the reckless conduct must have caused actual physical injury to another person. Therefore, the use of physical force is a

---

**5.** While counsel for Ceron–Sanchez characterized the conviction as "reckless driving" both in his brief and at oral argument, it is important to note that Ceron–Sanchez pleaded guilty to attempted aggravated assault and not to reckless driving or driving under the influence of alcohol, both of which are offenses set out in the Arizona vehicle code.

required element of § 13–1203(A)(1). Each of the three subsections to Ariz. Rev. Stat. § 13–1203(A) requires either the use, attempted use, or threatened use of force against the person of another, and by incorporation, a conviction under Ariz. Rev. Stat. § 13–1204(A)(2) meets the definition of crime of violence set out in 18 U.S.C. § 16(a).

A conviction under Ariz. Rev. Stat. § 13–1204(A)(2) also satisfies the alternative definition of a crime of violence set out in 18 U.S.C. § 16(b). Subsection (b) covers felony offenses which by their nature "involve[ ] a substantial risk that physical force ... may be used against the person or property of another." A conviction for aggravated assault under Ariz. Rev. Stat. § 13–1204(A)(2) requires proof that the defendant used either a deadly weapon or an instrument which "under the circumstances in which it is used, attempted to be used or threatened to be used is *readily capable of causing death or serious physical injury*." (emphasis added). The inclusion of this element, together with the assault provisions of § 13–1203(A), results in a high risk of violence against the person of another.

Ceron–Sanchez's statute of conviction reaches only conduct that would constitute a crime of violence; therefore, we do not look beyond the statutory definition. *Ye*, 214 F.3d at 1133. Because we find that Aggravated Assault with a Deadly Weapon/Dangerous Instrument under Ariz. Rev. Stat. § 13–1204(A)(2) constitutes a crime of violence under 8 U.S.C. § 1101(a)(43)(F), Ceron–Sanchez's conviction for Attempted Aggravated Assault with a Deadly Weapon/Dangerous Instrument constitutes an aggravated felony under 8 U.S.C. § 1101(a)(43)(U). The district court correctly increased Ceron–Sanchez's offense level by 16 levels under U.S.S.G. § 2L1.2(b)(1)(A).

Ceron–Sanchez argues in the alternative that the Sentencing Commission exceeded its authority in adopting U.S.S.G. § 2L1.2, and therefore, the provision is invalid. Under 28 U.S.C. § 994(d), "[t]he

Commission shall assure that the guidelines and policy statements are entirely neutral as to the ... national origin ... of offenders." Ceron–Sanchez asserts that "the 16 level increase in § 2L1.2 is based entirely on national origin." However, by its express terms, the § 2L1.2(b)(1)(A) increase is based on the fact that the defendant "previously was deported after a criminal conviction" for an aggravated felony. Section 2L1.2 makes no mention of national origin. As the Supreme Court noted in *Almendarez–Torres v. United States*, 523 U.S. 224, 230, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), recidivism "is as typical a sentencing factor as one might imagine." Section 2L1.2 is not contrary to 28 U.S.C. § 994(d), and Ceron–Sanchez's claim fails.

### III. CONCLUSION

The sentence imposed by the district court is AFFIRMED.