**Eun Kyung PARK, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 97–71373.

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 8, 2001*

Opinion Filed March 6, 2001

Amended June 5, 2001

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

Michael P. Karr, Michael P. Karr & Associates, Sacramento, California, for the petitioner.

Robert B. Jobe and Vicky Dobrin, Law Office of Robert B. Jobe, San Francisco, California, for the petitioner.

Jeffrey J. Bernstein, Office of Immigration Litigation, Civil Division, Department of Justice, Washington, D.C., for the respondent.

Before: GOODWIN, GRABER, and PAEZ, Circuit Judges.

## ORDER AND AMENDED OPINION

PAEZ, Circuit Judge:

### ORDER

Our opinion in *Park v. INS*, 241 F.3d 1186 (9th Cir.2001), is amended and the Clerk is ordered to file the attached amended opinion.

## OPINION

This appeal from the Board of Immigration Appeals ("BIA") raises the question whether a conviction for involuntary manslaughter under California Penal Code § 192(b) constitutes an "aggravated felony" for which an alien is deportable under 8 U.S.C. § 1251(a)(2)(A)(iii), now codified at 8 U.S.C. § 1227(a)(2)(A)(iii). We hold that it does and, therefore, dismiss the appeal for lack of jurisdiction.

## BACKGROUND

Petitioner Eun Kyung Park is a native and citizen of South Korea. She first entered the United States in December 1983 under an F–1 student visa. She obtained a bachelor's degree in theology from California Union College, a master's degree from Linda Vista Baptist Bible College and Seminary, and is now an ordained minister.

On May 23, 1996, Park pled guilty to and was convicted of involuntary manslaughter under California Penal Code § 192(b) for her involvement in the beating death of a 25–year–old woman on March 8, 1995, during a religious ceremony to exorcize demons. Park received a sentence of three years in state prison.

While Park was still in custody, on August 29, 1996, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause ("OSC"), which, as amended on February 26, 1997, alleged that Park was deportable as an alien convicted of an "aggravated felony" pursuant to § 241(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA").[1]

Park's hearing before an immigration judge ("IJ") was originally scheduled for March 5, 1997, but was continued several times to accommodate Park's unprepared attorney. Another attorney appeared as co-counsel at a hearing on April 25, but then subsequently withdrew, citing lack of cooperation from Park's original attorney. At the final hearing on May 9, the IJ denied the request for another continuance by Park's original attorney and ordered Park deported based on the allegations in the OSC, because "no application of relief from deportation had been filed by the Respondent."

In response to the adverse ruling, Park pursued two different avenues of relief. First, on May 15, 1997, Park filed a petition for writ of habeas corpus with the U.S. District Court for the Northern District of California, alleging that: (1) the IJ engaged in judicial misconduct; (2) the involuntary manslaughter conviction violated the Free Exercise Clause of the First Amendment; and (3) the involuntary manslaughter conviction was not a deportable offense.[2]

Second, on May 30, 1997, Park appealed the immigration judge's decision to the BIA. The BIA conducted a de novo review

---

1. The original OSC alleged that Park was deportable because she had entered the United States without inspection and had been convicted of a crime involving moral turpitude within five years of entry and had been sentenced to confinement of one year or longer. Upon stipulation by Park and the INS that Park actually entered the country legally in 1983 under a student visa, the immigration judge amended the OSC to reflect this fact. The INS does not pursue either of these grounds for deportation in its brief to this court (because Park entered with inspection and she committed the offense more than five years after entry).

2. The district court denied the petition on March 9, 1999, holding that: (1) there was no judicial misconduct; (2) Park could not collaterally attack her underlying conviction in a habeas petition against the INS; and (3) involuntary manslaughter was a "crime of violence" under existing Ninth Circuit precedent and thus a deportable offense. *Park v. Schlitgen,* No. C 97–1813, 1999 WL 138887 (N.D.Cal. Mar. 9, 1999). Park did not appeal the district court's ruling.

of the record and sustained the finding of deportability on November 14, 1997. The BIA concluded that: (1) the IJ did not abuse her discretion in denying Park's last motion for a continuance; (2) the withdrawal of co-counsel before the final hearing did not prejudice Park's case; and (3) Park's "conviction record ... establishe[d] by clear, unequivocal, and convincing evidence, that [she was] deportable as charged."

Park petitioned for review of the BIA decision to this court which, on January 29, 1998, ordered the appeal held in abeyance until certain jurisdictional issues were resolved in the then-pending case of *Magana–Pizano v. INS*, 152 F.3d 1213 (9th Cir.1998), *vacated by* 526 U.S. 1001, 119 S.Ct. 1137, 143 L.Ed.2d 206 (1999), *remanded to* 200 F.3d 603 (9th Cir.1999).

## DISCUSSION

### A. Jurisdiction and Standard of Review

 Under the transitional rules[3] of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009–546 (Sept. 30, 1996) ("IIRIRA"), we lack jurisdiction to hear Park's appeal if Park is an alien deportable because of a conviction for an "aggravated felony." *Scales v. INS*, 232 F.3d 1159, 1161 (9th Cir.2000). Nevertheless, we retain jurisdiction to determine our own jurisdiction. *Id.*

 We review de novo the threshold question whether a particular offense constitutes an "aggravated felony" for which an alien is deportable. *Ye v. INS*, 214 F.3d 1128, 1131 (9th Cir.2000). "In deciding whether a defendant committed an ag-

gravated felony, the issue is not whether [the defendant's] actual conduct constituted an aggravated felony, but whether the full range of conduct encompassed by [the statute the defendant violated] constitutes an aggravated felony." *United States v. Ceron–Sanchez*, 222 F.3d 1169, 1172 (9th Cir.2000) (internal quotation marks and citations omitted; brackets in original).

### B. Crime of Violence

 Any alien—including a legal, permanent resident alien—who is convicted of an "aggravated felony" at any time after admission to this country is deportable under 8 U.S.C. § 1251(a)(2)(A)(iii), now codified at 8 U.S.C. § 1227(a)(2)(A)(iii). The statutory definition of "aggravated felony" does not specifically include involuntary manslaughter in its list of enumerated offenses. *See* 8 U.S.C. § 1101(a)(43). The definition, however, encompasses a "crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F). Section 16 of Title 18 defines a "crime of violence" as:

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

We previously have held that involuntary manslaughter is a "crime of violence"

---

**3.** Immigration proceedings initiated by the INS before IIRIRA's general effective date of April 1, 1997, but where the final deportation or exclusion order is filed after October 30, 1996, are governed by interim transitional rules. *See* IIRIRA § 309(c); *Magana–Pizano*

*v. INS*, 200 F.3d 603, 607 (9th Cir.1999). The transitional rules apply to Park's appeal because the INS initiated proceedings by issuing an OSC on August 29, 1996, and the BIA did not issue a final deportation order until November 14, 1997.

under a different, although almost identically-worded, statute. *See United States v. Springfield*, 829 F.2d 860, 863 (9th Cir. 1987). In *Springfield*, a defendant whose primary offense was involuntary manslaughter under 18 U.S.C. § 1112 appealed a federal conviction under 18 U.S.C. § 924(c) (use of a firearm in a crime of violence). The court held that federal involuntary manslaughter was a "crime of violence" as defined in 18 U.S.C. § 924(c)(3)(B). *Id.* at 863 ("[I]nvoluntary manslaughter, which 'by its nature' involves the death of another person, is highly likely to be the result of violence. It thus comes within the intent, if not the precise wording, of section 924(c)(3).").

California Penal Code § 192(b) and 18 U.S.C. § 1112 define involuntary manslaughter in nearly identical terms. Section 192(b) provides:

> Manslaughter is the unlawful killing of a human being without malice....
>
> (b) Involuntary-in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection. This subdivision shall not apply to acts committed in the driving of a vehicle.

Section 1112 similarly provides:

> Manslaughter is the unlawful killing of a human being without malice....
>
> Involuntary–In the commission of an unlawful act not amounting to a felony,

or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death.

With the exception of the California provision for vehicular manslaughter, which is not applicable to this appeal, the statutes share almost identical wording. Thus, *Springfield* cannot be distinguished on the basis of different text in the federal and California manslaughter statutes.

Nor can *Springfield* be distinguished on the basis of different statutory definitions of "crime of violence." We relied in *Springfield* on subsection (B) of 18 U.S.C. § 924(c)(3).[4] Section 924(c)(3) provides, in full:

> For purposes of this subsection the term "crime of violence" means an offense that is a felony and-
>
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

With the exception of the placement of "an offense that is a felony," the wording of § 924(c)(3)(B) is identical to the wording of § 16(b). *See supra* p. 1021.[5]

Given the identical definitions in the two statutory schemes, *Springfield*'s holding controls here. We conclude that involuntary manslaughter under California law is a "crime of violence" under 18 U.S.C. § 16(b).[6]

---

**4.** We acknowledged in *Springfield* that § 924(c)(3)(A) did not apply because the "use, attempted use, or threatened use of physical force" is not an element of involuntary manslaughter. 829 F.2d at 862–63.

**5.** Although not relevant for our purposes, the definitions in § 924(c)(3)(A) and § 16(a) are

also identical except that § 924(c)(3) requires that the offense be a felony for both subsection (A) and (B), whereas § 16 requires that the offense be a felony only for subsection (b).

**6.** The BIA reached a similar conclusion in *Matter of Alcantar*, 20 I. & N. Dec. 801, 813–14, 1994 WL 232083 (1994) (involuntary

## C. Legislative History

Park argues that our decision in *Springfield* misinterpreted an excerpt of the legislative history. We agree, but we conclude that the mistake did not affect our holding in that case and, more importantly, does not affect our holding here.

In a footnote in *Springfield*, we quoted from what we indicated was the legislative history of § 924(c)(3):

"Since no culpability level is prescribed in this section, the applicable state of mind that must be shown is, at a minimum, 'reckless,' i.e., that the defendant was conscious of but disregarded the substantial risk that the circumstances existed." S.Rep. No. 307, 97th Cong., 1st Sess. 890–91 (1982).

829 F.2d at 863 n. 1. Review of this legislative history, however, shows that the quote actually describes a proposed, but never enacted, statute, 18 U.S.C. § 1823, intended as a substitute for § 924(c). Moreover, the quote refers not to the state of mind for a "crime of violence," but rather to the state of mind for use, possession, or display of certain weapons. *See* S.Rep. No. 307, 97th Cong., 1st Sess. 887–92 (1982). *See also* Katherine A. Brady et al., *California Criminal Law and Immigration* App. 9–E (Immigrant Legal Resource Center, San Francisco, 1999 ed.).

Nevertheless, we disagree with Park's contention that this error affected our holding in *Springfield*. The misquoted legislative history is found only in a single footnote, which corroborated, not determined, our analysis. We reasoned in *Springfield* that involuntary manslaughter, by its nature, involves the death of another person, which is highly likely to result from violent force against that person. *Springfield*, 829 F.2d at 863. Thus, there

is "a substantial risk that physical force against the person ... of another may be used in the course of committing the offense." 18 U.S.C. § 16(b).

## D. Intent

Park contends that § 16(b) requires a substantial risk that physical force may be used *intentionally* in the course of committing the offense and, therefore, does not apply to involuntary manslaughter. It is true that three of our sister circuits have interpreted "used" in the context of a "crime of violence" to require the *intentional* use of physical force. *See United States v. Chapa–Garza*, 243 F.3d 921, 926–27 (5th Cir.2001) (Texas felony driving while intoxicated is *not* a "crime of violence" under § 16(b)—"a crime of violence as defined in 16(b) requires recklessness as regards the substantial likelihood that the offender will *intentionally* employ force against the person or property of another in order to effectuate the commission of the offense"); *United States v. Rutherford*, 54 F.3d 370, 374 (7th Cir.1995) (Delaware first-degree assault for driving under the influence of alcohol and causing serious injury is *not* a "crime of violence" under U.S.S.G. § 4B1.2(1)(i), with language identical to § 16(a)—"use of force" does not necessarily apply to negligent or reckless criminal acts that result in injury); *United States v. Parson*, 955 F.2d 858, 866 (3d Cir.1992) (in dicta—both § 16(a) and (b) require a specific intent to use force). The Tenth and the Eleventh Circuits have concluded otherwise. *See Tapia Garcia v. INS*, 237 F.3d 1216, 1222 (10th Cir.2001) (Idaho driving under the influence is a "crime of violence" under § 16(b)); *Le v. U.S. Attorney General*, 196 F.3d 1352, 1354 (11th Cir.1999) (Florida driving under the influence with serious

---

manslaughter under Illinois law is a "crime of violence" under 18 U.S.C. § 16(b)). The district court also found *Springfield* control-

ling in its order denying Park's petition for habeas corpus relief. *Park*, 1999 WL 138887, at *8.

bodily injury is a "crime of violence" under § 16(a)).

■ This, however, is not an open question in our circuit. We have held, independent of *Springfield,* that a reckless mens rea is sufficient for both § 16(a) and § 16(b). *Ceron–Sanchez,* 222 F.3d at 1172–73. *Ceron–Sanchez* involved a prior conviction under Arizona law for attempted aggravated assault for a traffic accident the defendant caused while driving intoxicated. *Id.* at 1170–71 (Ariz.Rev.Stat. §§ 13–1001 and 13–1204). We rejected the defendant's argument that his crime involving only a reckless state of mind did not constitute a "crime of violence" for purposes of an aggravated felony sentencing enhancement pursuant to U.S.S.G. § 2L1.2. *Id.* at 1172–73 (holding that his conviction qualified as a "crime of violence" under both § 16(a) and § 16(b)).[7]

■ Involuntary manslaughter under California law may be committed with only criminal negligence. *See People v. Penny,* 44 Cal.2d 861, 880, 285 P.2d 926 (1955). The California Supreme Court has defined criminal negligence in the involuntary manslaughter context as:

> " 'aggravated, culpable, gross, or reckless, that is, the conduct of the accused

must be such a departure from what would be the conduct of an ordinarily prudent or careful man under the same circumstances as to be incompatible with a proper regard for human life, or in other words, a disregard for human life or an indifference to consequences....' "

*Walker v. Superior Court,* 47 Cal.3d 112, 135, 253 Cal.Rptr. 1, 763 P.2d 852 (1988) (quoting *Penny,* 44 Cal.2d at 879, 285 P.2d 926). This definition describes a mens rea no less culpable than recklessness under Arizona law:

> "Recklessly" means, with respect to a result or to a circumstance described by a statute defining an offense, that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware of such risk solely by reason of voluntary intoxication also acts recklessly with respect to such risk.

Ariz.Rev.Stat. § 13–105.[8] Given the sub-

---

7. It is also possible to draw a distinction between the state of mind required for use of force in § 16(a) and (b). Subsection (a) requires that the offense have "as an element the use, attempted use, or threatened use of physical force"—in other words, the use of force must be proven against the defendant personally. By contrast, subsection (b) provides in the passive voice: "any other offense ... that, by its nature, involves a substantial risk that physical force against the person or property of another *may be used in the course of committing the offense.*" (Emphasis added.) Whereas § 16(a) examines the defendant's state of mind directly, § 16(b) focuses on the nature of the felony. This provides an additional reason that § 16(b), upon which we rely here, does not require that force be used intentionally.

8. The Model Penal Code defines recklessness in a similar fashion:

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

§ 2.02(2)(c) (1985).

stantial similarity of recklessness in Arizona and criminal negligence in the involuntary manslaughter context in California, our holding that involuntary manslaughter under California law is a "crime of violence" under § 16(b) conforms with our decision in *Ceron–Sanchez.*[9]

### E. Retroactivity

Park also argues that the definition of "aggravated felony" as amended by IIRIRA should not apply retroactively to her. Section 321(a) of IIRIRA reduced the sentencing requirement for an "aggravated felony" from "at least 5 years" to "at least one year" upon its enactment on September 30, 1996. Park pled guilty and was convicted of involuntary manslaughter on May 23, 1996, and was sentenced to a three-year prison term. Thus, even if involuntary manslaughter is categorically a "crime of violence," Park's offense would not have qualified as an "aggravated felony" under the pre-IIRIRA definition.

IIRIRA, however, clearly states, and we have so held, that the modified definition of "aggravated felony" applies retroactively to all defined offenses, regardless of the date of conviction. *See* IIRIRA § 321(b) (codified at 8 U.S.C. § 1101(a)(43)) ("Notwithstanding any other provision of law (including any effective date), the term applies regardless of whether the conviction was entered before, on, or after [September 30, 1996].7"); *Aragon–Ayon v. INS,* 206 F.3d 847, 853 (9th Cir.2000) (holding that "Congress intended the 1996 amendments to make the aggravated felony definition apply retroactively to all defined offenses whenever committed").

Although the date of the underlying criminal conviction does not matter, IIRIRA § 321(c) specifies that the amended definition of "aggravated felony" applies only to "actions taken on or after the date of the enactment of [IIRIRA]." Park argues that the amended definition should not apply to her because the INS initiated deportation proceedings against Park (by issuing an OSC) on August 29, 1996, one month before IIRIRA was signed into law. We have interpreted "actions taken" to include actions taken by the BIA on appeal, although not actions taken by a United States Court of Appeals. *Ortiz v. INS,* 179 F.3d 1148, 1155–56 (9th Cir.1999); *Valderrama–Fonseca v. INS,* 116 F.3d 853, 856 (9th Cir.1997). The BIA issued its final order in Park's appeal on November 14, 1997, and thus the amended definition applies to her.

### CONCLUSION

Park was convicted of involuntary manslaughter—a "crime of violence" under our decision in *Springfield*—and was sentenced to a prison term greater than one year. Thus, her conviction falls within the amended definition of "aggravated felony" under 8 U.S.C. § 1101(a)(43)(F). Accordingly, we must dismiss her petition for lack of jurisdiction.

PETITION DISMISSED.

---

**9.** We do not hold that every crime in which recklessness or criminal negligence is the mens rea necessarily qualifies as a "crime of violence" within the meaning of § 16(b). We do, however, hold that the crime at issue here requires a sufficiently culpable mens rea to qualify, and we reaffirm that in this context an *intentional* use of physical force is not required.