Ramon Ledezma GALICIA, Petitioner,

v.

Phillip C. CRAWFORD, Portland District Director, Bureau of Immigration and Customs Enforcement; et al., Respondents.

Civil No. 03–1316–JO.

United States District Court, D. Oregon.

Dec. 9, 2003.

Stephen W. Manning, Jessica M. Boell, Immigrant Law Group, L.L.P., Portland, OR, for Petitioner.

Kenneth C. Bauman, Assistant United States Attorney, District of Oregon, Portland, OR, for Respondents.

## OPINION AND ORDER

ROBERT E. JONES, District Judge.

Petitioner Ramon Ledezma–Galicia moves (# 8) to extend a temporary restraining order for habeas relief (# 6) granted by Judge King on September 24, 2003. Petitioner argues that his imminent deportation for an aggravated felony conviction over fifteen years ago is unlawfully and unconstitutionally retroactive. Petitioner asserts that 8 U.S.C. § 1227(a)(2)(A)(iii) (2003) ("Section 1227"), making an alien deportable for an aggravated felony conviction anytime after admission to the United States, is not explicitly retroactive and therefore he is not deportable. Further, petitioner asserts that applying Section 1227 retroactively violates his due process right to have his alien status in repose.[1]

The government responds that the Ninth Circuit in *Park v. I.N.S.*, 252 F.3d 1018 (9th Cir.2001), found that Congress

---

**1.** Petitioner raises additional issues, including the statutory interpretation of "actions taken" in Section 321(c) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009–546, 628 (1996), "admission" in 8 U.S.C. § 1227(a)(2)(A)(iii) (2003), and the effect of international law on applying immigration statutes retroactively to aliens. The parties agreed to focus on the issue of Section 1227 retroactivity and constitutional validity.

clearly intended that Section 1227 apply retroactively and that doing so was constitutionally valid. The government concedes, however, that the Ninth Circuit has not addressed the retroactive application of Section 1227 since the Supreme Court's most recent consideration of retroactive immigration law in *I.N.S. v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). In that case the Supreme Court clarified that there must be a sufficiently "clear indication from Congress that it intended" to apply a statute retroactively. *St. Cyr*, 533 U.S. at 316, 121 S.Ct. 2271. Applying Section 1227 retroactively without such clear intent could "produce an impermissible retroactive effect for aliens" by impairing vested rights under law existing at the time of petitioner's conviction. *Id.* at 320, 121 S.Ct. 2271.

I find that in the operation of the statute there is sufficiently clear intent to retroactively apply Section 1227. *St. Cyr*, 533 U.S. at 316–317, 121 S.Ct. 2271. Applying Section 1227 retroactively does not unfairly alter petitioner's expectations held at the time of his plea agreement. The temporary restraining order is dissolved and petitioner's habeas petition is denied.

## BACKGROUND

Petitioner is a native citizen of Mexico and became a permanent resident alien of the United States in February, 1985. In September, 1988, petitioner pleaded guilty in Oregon state court to sodomy in the first degree for the sexual abuse of a minor and was sentenced to eight months imprisonment. At the time of his conviction, petitioner was not eligible for deportation because his sentence was less than one year.[2] Petitioner served his sentence and continued on with his life in the United States.

In April, 2003, the Bureau of Immigration and Customs Enforcement ("BICE") issued petitioner a Notice to Appear and sought to remove him by mandatory order under Section 1227 for his 1988 conviction. Petitioner disputed the retroactive application of Section 1227 and requested a waiver of deportation under former Section 212(c) of the Immigration and Nationality Act of 1952 ("INA"), Pub.L. No. 82–414, 66 Stat. 163, 187 (former 8 U.S.C. § 1182(c)).

An Immigration Judge upheld the removal order and denied petitioner's request for a waiver. The Board of Immigration Appeals ("BIA") dismissed petitioner's appeal. Petitioner then filed a writ of habeas corpus in this court together with a motion for a temporary restraining order, which Judge King granted on September 24, 2003.[3] At a hearing on October 31, 2003, I continued the temporary restraining order and took the matter under advisement.

The BICE seeks to deport petitioner as an "alien who was convicted of an aggravated felony any time after admission."[4]

---

2. The 1982 deportation statute, in pertinent part, provides:

   (a) Any alien in the United States ... shall, upon the order of the Attorney General, be deported who—

   * * * * * *

   (4) is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefore in a prison or corrective institution, for a year or more. ...

8 U.S.C. § 1251(a)(4) (1982 & Supp. IV 1987) (current version at 8 U.S.C. § 1227(a)(2)(A)(i)).

3. I extended the temporary restraining order (# 9) until a hearing could be held on October 31, 2003.

4. Petitioner was convicted approximately three years after his admission to the United States in 1985.

8 U.S.C. § 1227(a)(2)(A)(iii). Section 321(a)(1) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") extended the definition of "aggravated felony" to include "sexual abuse of a minor."[5] Pub.L. No. 104–208, 110 Stat. 3009–546, 627 (codified at 8 U.S.C. § 1101(a)(43)(A)).

Petitioner concedes that his 1988 conviction qualifies as an aggravated felony under IIRIRA and further concedes that IIRIRA made the "aggravated felony" definition explicitly and lawfully retroactive "regardless of whether the conviction was entered before, on, or after the date of enactment."[6] IIRIRA § 321(b) (codified at 8 U.S.C. § 1101(a)(43)). However, petitioner disputes whether the retroactive definition necessarily applies to make him deportable for his 1988 conviction.

## JURISDICTION

Petitioner exhausted his administrative appeals with BICE and filed a petition for a writ of habeas corpus under 8 U.S.C. § 2241.[7] The District of Oregon is the proper venue, as petitioner is presently in the custody of the BICE at the Northern Oregon Regional Correctional Center in The Dalles, Oregon.

## DISCUSSION

The issue before me is whether Congress intended Section 1227 to be applied retroactively. The Ninth Circuit has held that Section 1227 does apply retroactively. However, that precedent has not been tested against the Supreme Court's retroactivity analysis set forth in *St. Cyr.*

The Ninth Circuit upheld the retroactive application of Section 1227 in cases decided before the *St. Cyr* decision. *See Park,* 252 F.3d at 1025. The Ninth Circuit has not revisited or overruled the reasoning in *Park.* The parties dispute the effect of *St. Cyr* on Ninth Circuit case law. Petitioner asserts that Section 1227 is not explicitly retroactive as required by *St. Cyr,* and therefore he is not deportable despite being properly categorized as an alien with an aggravated felony conviction. The government, in turn, distinguishes *St. Cyr* and asserts that the retroactivity of Section 1227 is settled law in the Ninth Circuit, as most recently restated in *Park.*

In *Park,* the government sought petitioner's removal under Section 1227 for a May, 1996, involuntary manslaughter conviction and three-year sentence. 252 F.3d at 1020. The law at the time of her conviction made aliens with an aggravated felony conviction deportable for sentences of at least five years. *Id.* at 1025. Section 321(a) of IIRIRA made Park's conviction a deportable offense for an aggravated felony with a sentence of more than one year as defined in 8 U.S.C. § 1101(a)(43)(A). *See id.* The Ninth Circuit found that "the modified definition of 'aggravated felony'

---

5. A sodomy conviction would have been a crime of moral turpitude that made an alien deportable. IIRIRA brought a conviction for the sexual abuse of a minor into an expedited deportation process by including it in the "aggravated felony" category. *See* 8 U.S.C. § 1228.

6. The effective date for Section 321 underscores the intent to apply the definition of "aggravated felony" retroactively: "The amendments made by this section shall apply to actions taken on or after the date of enact-

ment of this Act, regardless of when the conviction occurred...." IIRIRA § 321(c).

7. Petitioner also filed a direct appeal of the BIA's final administrative decision to the Ninth Circuit Court of Appeals. Habeas jurisdiction in federal district court under Section 2241 is discretionary. *Marquez v. I.N.S.,* 346 F.3d 892, 897 (9th Cir.2003) (the "district court properly waived exhaustion, because the exhaustion requirement in § 2241 cases is prudential, rather than jurisdictional.").

applies retroactively to all defined offenses, regardless of the date of conviction" and dismissed Park's petition. *Id.* (citing *Aragon–Ayon v. I.N.S.,* 206 F.3d 847, 853 (9th Cir.2000)). While *Park* is the most recent Ninth Circuit case to specifically address Section 1227, the reasoning behind *Park's* conclusion that Section 1227 applied retroactively was based primarily on the reasoning in *Aragon–Ayon.*

In *Aragon–Ayon,* the petitioner appealed his deportablility under Section 1227 for a 1992 conviction for assault with a deadly weapon. 206 F.3d at 849. The Ninth Circuit held "that Congress intended the 1996 [IIRIRA] amendments to make the aggravated felony definition apply retroactively to all defined offenses whenever committed, **and to make aliens so convicted eligible for deportation notwithstanding the passage of time between the crime and the removal order.**" 206 F.3d at 853 (emphasis added). There are two parts to this holding: (1) Congress explicitly intended to apply retroactively the definition of "aggravated felony;" and (2) statutes making aliens deportable for an aggravated felony conviction—like Section 1227—are thereby applied retroactively.

The Ninth Circuit's analysis in *Aragon–Ayon* focused, however, only on the first issue, "whether Congress has clearly manifested an intent for the amended definition of aggravated felony to apply retroactively." *Id.* at 851. The Ninth Circuit appears to have assumed that Section 1227 was implicitly retroactive given that the term "aggravated felony" used in Section 1227 explicitly was made retroactive. That assumption—which I believe to be

correct—must be revisited given the "high level of clarity" needed to make a statute retroactive, as articulated in *St. Cyr.,* 533 U.S. at 317, 121 S.Ct. 2271.

*St. Cyr* analyzed two separate issues with two different standards for statutory intent: the plain statement rule and clear retroactive intent. Congress must make a plain statement of retroactive effect to overcome constitutional restrictions on retroactive legislation. But where a statute's retroactive effect does not touch on constitutionally sensitive areas, the statute must clearly imply retroactive effect and not transgress a due process right to fairness or repose.

In *St. Cyr,* the respondent pleaded guilty to an aggravated felony in 1996 and at that time became subject to deportation and eligible for a discretionary waiver of deportation. *Id.* at 314–315, 121 S.Ct. 2271. The following year, IIRIRA went into effect. IIRIRA precluded most removal orders from "judicial review" and repealed the discretionary waiver of deportation formerly available in INA § 212(c).[8] The government in *St. Cyr* thus asserted that the court had no habeas jurisdiction for judicial review under 28 U.S.C. § 2241, and that the INA § 212(c) waiver of removal was retroactively repealed. *Id.* at 298, 121 S.Ct. 2271. The Supreme Court applied the plain statement rule to find that Congress did not explicitly deny habeas jurisdiction—distinguished from "judicial review" as defined in the statute—under § 2241 for removal orders and therefore habeas jurisdiction remained for removal orders. *Id.* at 314, 121 S.Ct. 2271.

■ When Congress seeks to legislate on issues having a direct effect on tradi-

---

8. Congress replaced the waiver with the discretionary authority of the Attorney General to cancel deportation except for a class of aliens "convicted of any aggravated felony." 8 U.S.C. § 1229b(a)(3); *St. Cyr,* 533 U.S. at

297, 121 S.Ct. 2271. The government asserted that this amendment repealed the possibility of waiver available to St. Cyr retroactive to when he made his plea agreement on an aggravated felony. *Id.*

tional constitutional precepts such as habeas jurisdiction, the plain statement rule requires that Congress speak plainly and specifically. *See St. Cyr*, 533 U.S. at 299 n. 10, 121 S.Ct. 2271 (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (no explicit waiver of federal government's sovereign immunity); *Gregory v. Ashcroft*, 501 U.S. 452, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) (no explicit intent to usurp traditional state sovereignty by applying federal ADEA to state judges); *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) (no explicit waiver of Eleventh Amendment immunity)).

Congress repealed the waiver with a simple statement in IIRIRA § 304(b) that did not directly refer to habeas jurisdiction: "Section 212(c) (8 U.S.C. 1182(c)) is repealed." 110 Stat. 3009–597. Absent a clear and explicit intent to repeal habeas jurisdiction, combined with the serious and plain effect of the repeal on the constitutional precept of habeas corpus review, the Court found an ambiguity in statutory intent sufficient to question the constitutional validity of the repeal. The Court held that the absence of another venue for judicial review of an alien's deportation "coupled with the lack of a clear, unambiguous, and express statement of congressional intent to preclude judicial consideration on habeas of such an important question of law, strongly counsels against adopting a construction that would raise serious constitutional questions." *Id.* at 314, 121 S.Ct. 2271. Habeas jurisdiction remained available to the courts because "[i]mplications from statutory text or legislative history are not sufficient to repeal habeas jurisdiction; instead, Congress must articulate specific and unambiguous statutory directives to effect a repeal." *Id.* at 299, 121 S.Ct. 2271.

The Court applied an analogous yet separate line of reasoning to the issue of whether the waiver repeal applied retroactively. Citing *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), the Court found that the repeal of INA § 212(c) was not made retroactive without Congress expressing a clear intent to do so and given the equities involved. *St. Cyr*, 533 U.S. at 326, 121 S.Ct. 2271. The retroactive effect of a statute must be "so clear that it could sustain only one interpretation." *Id.* at 317, 121 S.Ct. 2271 (quoting *Lindh v. Murphy*, 521 U.S. 320, 328, n. 4, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)). A clearly expressed intent for retroactive effect affords deference to Congress's public policy choice. *Landgraf*, 511 U.S. at 280, 114 S.Ct. 1483.

Even if a statute does not expressly state its retroactive effect, Congress may still intend a retroactive effect if the statutory language creates "a new disability, in respect to transactions or considerations already past." *St. Cyr*, 533 U.S. at 321, 121 S.Ct. 2271 (internal quotation omitted); *see also Martin v. Hadix*, 527 U.S. 343, 352, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999) (citing *Landgraf*, 511 U.S. at 280, 114 S.Ct. 1483) ("If there is no congressional directive on the temporal reach of a statute, we determine whether the application of the statute to the conduct at issue would result in a retroactive effect.").

The *Landgraf* test for clear intent is the proper standard by which to analyze whether Section 1227 applies retroactively, not the plain statement rule as petitioner asserts. The Supreme Court has applied the plain statement test for statutory ambiguity in constitutionally sensitive areas such as a writ of habeas corpus, sovereign immunity or federalism. These are nontraditional areas for Congress's legislative power. In contrast, "it is beyond dispute that, within constitutional limits, Congress

has the power to enact laws with retroactive effect." [9] *St. Cyr*, 533 U.S. at 316, 121 S.Ct. 2271 (citing *Landgraf*, 511 U.S. at 268, 114 S.Ct. 1483). Congress may properly enact retroactive laws that avoid specific constitutional restrictions on retroactive application. "Absent a violation of one of those specific provisions, the potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope." *Landgraf*, 511 U.S. at 267, 114 S.Ct. 1522.

■ Applying the *Landgraf* test articulated in *St. Cyr*, I find that the retroactive definition of "aggravated felony" in Section 1101 clearly shows Congress's intent to make petitioner deportable under Section 1227 as an alien convicted of an aggravated felony.[10] The only practical, functional interpretation of Section 1227 is that it applies retroactively to petitioner's aggravated felony conviction.

Section 1227 operates to make aliens convicted at any time of an aggravated felony deportable. Changing the meaning of a statutory term necessarily changes the effect of the statute using that term. As discussed earlier, Congress clearly intended the definition of "aggravated felony" to be retroactive. To limit the retroactive application of "aggravated felony" to the definition only and not to the substantive statute employing that term would nullify the amendment because there would be no substantive consequence to the change. Making Section 1227 retroactive is a practical consequence of making changes to its definitions retroactive.

Further, the term "aggravated felony" is statutory shorthand for a list of serious crimes defined in Section 1101 for which a conviction makes an alien deportable. An alien convicted of an aggravated felony is "conclusively presumed deportable" and thereby subject to expedited removal.[11] 8 U.S.C. § 1228(c). The structure of Chapter 12 in Title 8 allows Congress to express intent by amending the definition of "aggravated felony" without having to recreate the expedited deportation framework for every crime.[12] By retroactively

---

9. *Landgraf* discussed several constitutional restrictions on retroactive acts of Congress: ex post facto, the contracts clause, the takings clause, bills of attainder, and a right of due process through notice and repose. 511 U.S. at 266, 114 S.Ct. 1483.

10. In *U.S. v. Ubaldo–Figueroa*, 347 F.3d 718 (9th Cir.2003), the Ninth Circuit found that a due process claim for an impermissible retroactive effect was plausible and held that petitioner could collaterally attack his deportation under 8 U.S.C. § 1326(d). The Ninth Circuit analyzed the due process claim by analogizing retroactive economic legislation to retroactive immigration legislation. *Id.* at 727 n. 9. The analysis consisted of a two part test: first, basic scrutiny for a legitimate purpose and rational means in applying the statute retroactively, and second, requiring a moderate period of retroactivity not to be indefinite. *Id.* at 727–728. Because this analysis is dicta that speculates on the potential for a due process claim, an analysis root-

ed in immigration jurisprudence is more appropriate.

There is ample jurisprudence on retroactive immigration legislation that does not include a limited time frame for retroactive effect in deference to Congress's plenary authority over matters of immigration. *See e.g., Galvan v. Press*, 347 U.S. 522, 531, 74 S.Ct. 737, 98 L.Ed. 911 (1954); *Harisiades v. Shaughnessy*, 342 U.S. 580, 587–588, 72 S.Ct. 512, 96 L.Ed. 586 (1952); *Duldulao v. I.N.S.*, 90 F.3d 396, 399 (9th Cir.1996); *U.S. v. Yacoubian*, 24 F.3d 1, 8 (9th Cir.1994). Judicial review of retroactive immigration legislation seeks a legitimate purpose and rational means and no more.

11. The expediting procedures include less time to appeal a final deportation order. 8 U.S.C. § 1252(b).

12. The historical development of Chapter 12 in Title 8 shows that its structure is premised on a close nexus between defining terms and

designating sexual abuse of a minor as an aggravated felony, Congress brought petitioner and all other aliens convicted of sexual abuse of a minor into the expedited deportation process. *See U.S. v. Yacoubian,* 24 F.3d 1, 7–8 (9th Cir.1994) ("retroactive application of the firearm (destructive device) conviction deportation provision— is rationally related to a legitimate governmental purpose. It results in uniform application of the deportation provision to aliens convicted of firearm offenses, no matter when those convictions occurred."). Redundant language in the deportation statute for retroactive application is unnecessary when the statute is made retroactive by its own terms.[13]

■ Finally, petitioner argues that as in *St. Cyr,* his plea agreement in 1988 vested him with the right to have his conviction in repose. The Supreme Court in *St. Cyr* stated that "[p]lea agreements involve a quid pro quo between a criminal defendant and the government * * *. There can be little doubt that, as a general matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions." 533 U.S. at 321–322, 121 S.Ct. 2271. Based on the "obvious and severe retroactive effect" of eliminating an alien's vested right of requesting waiver under then existing immigration law, the Court found for St. Cyr and ordered the government to accept his application for waiver.[14] *Id.* at 325, 121 S.Ct. 2271.

Here, petitioner also entered into a plea agreement and argues that making Section 1227 retroactive to his 1988 conviction violates his fair expectations under due process to have his past conviction in repose. According to the pre-sentence report, petitioner pleaded guilty to sodomy in the first degree, a class A felony. In exchange, the prosecutor dropped a second charge of rape in the first degree, also a Class A

operative statutes. The crimes that originally defined an aggravated felony—murder, drug trafficking, and weapons trafficking—had made aliens deportable under separate statutes. *See* Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, 7342, 102 Stat. 4181, 4469 (codified as amended at 8 U.S.C. 1101(a)(43)); *see also* 12 Geo. Immigr. L.J. 589, 619 n. 40 (1998). An "aggravated felon" became a new category of deportable alien with an expedited deportation process. 8 U.S.C. § 1252(a) (1982 & Supp. IV 1986).

Later amendments by Congress took advantage of the expedited deportation process by adding crimes to the definition. *See* Immigration Act of 1990, Pub.L. No. 101–649, 104 Stat. 4978, 5048 (adding money laundering, crimes of violence with sentence of at least five years and foreign convictions with a term of imprisonment completed within the previous fifteen years); Immigration and Nationality Technical Corrections Act of 1994, Pub.L. No. 103–416, 108 Stat. 4305, 4320–22 (adding firearms offenses, monetary transactions from illegally derived funds, theft or burglary with a sentence of at least five years, alien smuggling for commercial gain, and trafficking in

false documents). Congress again extended the "aggravated felony" definition with IIRI-RA in 1996 to include the sexual abuse of a minor. Pub.L. No. 104–208, 110 Stat. 3009–546.

**13.** *See also Seale v. I.N.S.,* 323 F.3d 150, 159 (1st Cir.2003) ("We explicitly rejected [petitioner's] argument that a practical distinction could be drawn between IIRIRA's definitional section, which contains a retroactive provision, and IIRIRA's operational section mandating removal."); *Gousse v. Ashcroft,* 339 F.3d 91, 99 (2d Cir.2003) ("All that is required for removal is that an earlier conviction be encompassed by the definition of 'aggravated felony' at the time removal proceedings are initiated."); *Flores–Leon v. I.N.S.,* 272 F.3d 433, 439 (7th Cir.2001) ("We join the First and the Ninth Circuits in concluding that Congress has clearly manifested an intent to apply the amended definition of 'aggravated felony' retroactively.") (citing in part to *Aragon–Ayon, supra* ).

**14.** Petitioner Ledezma–Galicia applied for and was denied a waiver of deportablility by the Immigration Judge and the BIA.

felony, and agreed to accept the recommendations in the pre-sentence report. The potential maximum sentence for a class A felony at that time was twenty years imprisonment. O.R.S. § 161.605 (1987). The pre-sentence report recommended six months county jail time. The circuit court sentenced petitioner to eight months county jail time.

Petitioner's plea agreement left him susceptible to deportation for imprisonment. Petitioner had no expectation of avoiding deportation with his plea agreement, thus the equities at play in *St. Cyr* are inapposite to petitioner's situation.

The temporary restraining order is DISSOLVED (# 8) and petitioner's habeas petition (# 6) is DENIED.