**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSE ROBERTO FERNANDEZ-RUIZ,

*Petitioner,*

v.

ALBERTO R. GONZALES, Attorney General,

*Respondent.*

No. 03-74533

Agency No.
A90-116-400

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
March 21, 2006—San Francisco, California

Filed October 26, 2006

Before: Mary M. Schroeder, Chief Judge, Stephen Reinhardt,
Alex Kozinski, John T. Noonan, Diarmuid F. O'Scannlain,
Michael Daly Hawkins, Kim McLane Wardlaw,
Richard R. Clifton, Jay S. Bybee, Consuelo M. Callahan, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Bea;
Partial Concurrence and Partial Dissent by Judge Kozinski;
Dissent by Judge Wardlaw

17851

**COUNSEL**

Erica K. Rocush, Snell & Wilmer L.L.P., Tucson, Arizona, for the petitioner-appellant.

Peter D. Keisler, Assistant Attorney General; Donald E. Keener, Deputy Director; John Andre, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for the respondent.

Lynn Marcus, Immigration Law Clinic, Rogers College of Law, University of Arizona, Tucson, Arizona; Vicky Dobrin and Hilary Han, Dobrin & Han, PC, Seattle, Washington; Lory Diana Rosenberg, Immigration Defense & Expert Assistance Consultation and Training, Rockville, Maryland, for the amici.

**OPINION**

BEA, Circuit Judge, joined by Chief Judge SCHROEDER, Judges REINHARDT, NOONAN, HAWKINS, CLIFTON:

This case calls upon us to decide whether the petitioner's 2003 Arizona conviction for domestic violence was a "crime of domestic violence" under a federal statute that triggers removal of a legally admitted resident alien from this country. The federal statute, as interpreted by the Supreme Court in *Leocal v. Ashcroft*, 543 U.S. 1 (2004), covers only those crimes involving intentional conduct. Because the relevant Arizona statute permits conviction when a defendant recklessly but unintentionally causes physical injury to another, and because the petitioner's documents of conviction do not prove he intentionally used force against another, we conclude the federal statute does not apply. Accordingly, the petitioner is not removable for his 2003 Arizona conviction and we return the case to the original three-judge panel to decide whether he is removable on other grounds.

## I. Factual and Procedural Background

Jose Roberto Fernandez-Ruiz, a native and citizen of Mexico, petitions for review of the Board of Immigration Appeals' (BIA's) order affirming an immigration judge's (IJ's) decision to rescind his lawful permanent resident status, remove him from the United States, and deny him any relief from removal.

Fernandez-Ruiz was admitted into the United States as a lawful permanent resident on October 26, 1990. Thereafter, he committed several crimes, three of which are relevant to his petition for review.

In 1992, Fernandez-Ruiz was convicted of "theft by control of property" in violation of Arizona Revised Statutes § 13-1802(A)(1) & (C). For this offense, his initial sentence was

two years' probation. He later violated the conditions of his probation and was sentenced to sixty days in jail. For a second probation violation, he was sentenced to jail for "twelve months at half time."

In both 2002 and 2003, Fernandez-Ruiz was convicted of "domestic violence/assault" in violation of Arizona Revised Statutes §§ 13-1203 and 13-3601. For the 2002 conviction, Fernandez-Ruiz was sentenced to thirty days in jail, suspended should he properly perform probation for fifteen months. From this sentence, we infer his offense constituted a "class three" misdemeanor.[1] The offense underlying Fernandez-Ruiz's 2003 conviction, by contrast, was a "class two" misdemeanor.

On the basis of these convictions, the Department of Homeland Security (DHS) initiated removal proceedings. As grounds for removal, the DHS charged that Fernandez-Ruiz had post-admission convictions for a crime of domestic violence (the 2003 conviction now at issue), two crimes involving moral turpitude (the 2002 and 2003 convictions), and an aggravated felony (the theft by control of property conviction).

An IJ sustained all three charges of removal, deemed Fernandez-Ruiz ineligible to apply for a discretionary waiver of deportation, and denied cancellation of removal. In a two-page, per curiam opinion, the BIA adopted and affirmed the decision of the IJ.

A three-judge panel of our court denied Fernandez-Ruiz's petition for review. *See Fernandez-Ruiz v. Gonzales*, 410 F.3d 585, 588 (9th Cir. 2005). As a threshold matter, the panel held our court had jurisdiction over the case. *See id.* at 587. The

---

[1]Arizona law designates three classes of misdemeanors. *See* Ariz. Rev. Stat. § 13-707(A). Class three is the least serious, punishable by a maximum of thirty days' imprisonment. *See id.*

panel went on to hold that Fernandez-Ruiz's class two misdemeanor domestic violence offense constituted a crime of violence under 18 U.S.C. § 16(a) and rendered him removable under 8 U.S.C. § 1227(a)(2)(E)(i). *See Fernandez-Ruiz*, 410 F.3d at 588.[2] Because his conviction occurred in 2003, after the 1996 repeal of 8 U.S.C. § 1182(c), Fernandez-Ruiz was ineligible to apply for a discretionary waiver of deportation. *Fernandez-Ruiz*, 410 F.3d at 588. Because his theft by control of property offense was an aggravated felony, he was ineligible for cancellation of removal. *Id.*

We ordered rehearing en banc to resolve an inter- and intra-circuit conflict as to whether, under *Leocal v. Ashcroft*, 543 U.S. 1 (2004), crimes involving the merely reckless use of force can be crimes of violence. *See Fernandez-Ruiz v. Gonzales*, 431 F.3d 1212, 1212 (9th Cir. 2005).[3]

## II. Jurisdiction

We adopt the portion of the panel's opinion addressing the government's claim that, under 8 U.S.C. § 1252(a)(2)(C), we lack jurisdiction to consider Fernandez-Ruiz's petition. *See Fernandez-Ruiz*, 410 F.3d at 586-87. As the panel explained, under section 106(a)(1)(A)(iii) of the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, "we are no longer barred by § 1252(a)(2)(C) from reviewing Fernandez-Ruiz's petition on account of his past convictions." *Fernandez-Ruiz*, 410 F.3d at 587.

---

[2]Holding Fernandez-Ruiz removable on this ground obviated the panel's need to address whether he was also removable because his domestic violence offenses were crimes involving moral turpitude or because his theft by control of property offense was an aggravated felony. *See Fernandez-Ruiz v. Gonzales*, 410 F.3d 585, 588 n.2 (9th Cir. 2005).

[3]The three-judge panel opinion shall not be cited as precedent by or to this court or any district court of the Ninth Circuit, except to the extent adopted by the en banc court. *Fernandez-Ruiz v. Gonzales*, 431 F.3d 1212, 1212 (9th Cir. 2005).

### III. Crime of Domestic Violence: Categorical Analysis

**[1]** The government claims Fernandez-Ruiz's 2003 misdemeanor domestic violence conviction subjected him to removal under 8 U.S.C. § 1227(a)(2)(E)(i), which permits the deportation of "[a]ny alien who at any time after admission is convicted of a crime of domestic violence."[4] In this context, a "crime of domestic violence" is "any crime of violence (as defined in section 16 of Title 18) against a person" who has one of several enumerated domestic relationships with the perpetrator. *Id.*

**[2]** To determine whether Fernandez-Ruiz's state law domestic violence offense meets the Immigration and Nationality Act's definition of a crime of domestic violence, we begin by applying the "categorical approach" laid out in *Taylor v. United States*, 495 U.S. 575 (1990). *See Ruiz-Morales v. Ashcroft*, 361 F.3d 1219, 1221-22 (9th Cir. 2004) (applying the categorical approach to determine whether mayhem under California law was a crime of violence under 18 U.S.C. § 16). Under this approach, without regard to the particular facts of Fernandez-Ruiz's offense—and looking beyond the Arizona statutes' title for the offense—we must ask whether the "full range of conduct" proscribed by the statutes under which Fernandez-Ruiz was convicted meets the definition of a crime of domestic violence. *United States v. Baron-Medina*, 187 F.3d 1144, 1146 (9th Cir. 1999) (quoting *United States v. Lomas*, 30 F.3d 1191, 1193 (9th Cir. 1994)); *see Leocal*, 543 U.S. at 7 (explaining that the language of 18 U.S.C. § 16 requires "look[ing] to the elements and the nature of the offense of conviction, rather than to the particular facts relating to [a] petitioner's crime"). Interpreting the definition of a crime of domestic violence requires us to consider the "ordinary, contemporary, and common meaning of the language Congress used in defining" a crime of violence. *Ruiz-Morales*,

---

[4]The government does not now argue that Fernandez-Ruiz's 2002 misdemeanor domestic violence conviction met these requirements.

361 F.3d at 1222 (quoting *United States v. Trinidad-Aquino*, 259 F.3d 1140, 1144 (9th Cir. 2001)); *see Leocal*, 543 U.S. at 9 ("When interpreting a statute, we must give words their 'ordinary or natural' meaning." (quoting *Smith v. United States*, 508 U.S. 223, 228 (1993))).

**[3]** Of the two statutes under which Fernandez-Ruiz was convicted, only the assault statute requires in-depth analysis. *See* Ariz. Rev. Stat. § 13-1203.[5] Both parties agree the specific focus of our analysis must be whether the offense defined in Arizona Revised Statutes § 13-1203(A)(1) is a crime of violence under 18 U.S.C. § 16(a).[6] The state statute reads: "A person commits assault by . . . [i]ntentionally, knowingly or *recklessly* causing any physical injury to another person." Ariz. Rev. Stat. § 13-1203(A)(1) (emphasis

---

[5]The other statute simply provides that, when the perpetrator of an assault has one of several domestic relationships with the victim, the assault constitutes a state law crime of domestic violence. *See* Ariz. Rev. Stat. § 13-3601(A). All of the relationships covered under the state statute are covered under the Immigration and Nationality Act. *See* 8 U.S.C. § 1227(a)(2)(E)(i) ("[T]he term 'crime of domestic violence' means any crime of violence . . . by any . . . individual against a person who is protected from that individual's acts under the domestic or family violence laws of the United States or any State . . . .").

[6]As a class two misdemeanor, Fernandez-Ruiz's 2003 domestic violence conviction could have been under either Arizona Revised Statutes § 13-1203(A)(1) or (A)(2). *See id.* § 13-1203(B). The documents of conviction do not reveal whether Fernandez-Ruiz was charged and convicted under one or both of these provisions. As already explained, however, Fernandez-Ruiz committed a categorical crime of violence only if the "full range of conduct" for which he could have been convicted meets the requirements of 18 U.S.C. § 16. *United States v. Baron-Medina*, 187 F.3d 1144, 1146 (9th Cir. 1999) (quoting *United States v. Lomas*, 30 F.3d 1191, 1193 (9th Cir. 1994)). Thus, because we ultimately conclude that not all of the conduct proscribed by Arizona Revised Statutes § 13-1203(A)(1) meets the definition of a crime of violence, we do not consider Arizona Revised Statutes § 13-1203(A)(2). Additionally, we need not consider 18 U.S.C. § 16(b) because Fernandez-Ruiz's assault convictions were both misdemeanors. *See id.* (defining a crime of violence, in relevant part, as "any other offense that *is a felony*" (emphasis added)).

added). The federal statute defines a crime of violence as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a). Thus, the determinative question is whether "recklessly causing . . . physical injury to another person," Ariz. Rev. Stat. § 13-1203(A)(1), necessarily involves the "use of physical force against the person . . . of another," 18 U.S.C. § 16(a).[7]

## A. Existing Ninth Circuit Precedent

[4] Until recently, it was well established in this circuit that crimes involving the reckless use of force could be crimes of violence. For example, in *United States v. Ceron-Sanchez*, 222 F.3d 1169 (9th Cir. 2000), we interpreted the very statute at issue here and concluded it satisfied 18 U.S.C. § 16(a):

> A conviction under § 13-1203(A)(1) may be based on reckless conduct, which Ceron-Sanchez argues does not constitute violent conduct. However, in order to support a conviction under § 13-1203(A)(1), the reckless conduct must have caused actual physical injury to another person. Therefore, the use of physical force is a required element of § 13-1203(A)(1).

*Ceron-Sanchez*, 222 F.3d at 1172-73.

We held that crimes of recklessness could be crimes of violence even though we recognized there is an element of voli-

---

[7]Our standard of review is de novo. *See Singh v. Ashcroft*, 386 F.3d 1228, 1230 (9th Cir. 2004); *see also Oyebanji v. Gonzales*, 418 F.3d 260, 262 (3d Cir. 2005) ("Because the BIA is not charged with administering 18 U.S.C. § 16 and has no special expertise regarding the interpretation of that criminal statute, we do not defer to the BIA's interpretation of that provision."); *Singh*, 386 F.3d at 1230 ("We reject the . . . assertion that we owe 'substantial deference' to the Attorney General's interpretations of general state and federal criminal statutes.").

tion inherent in 18 U.S.C. § 16(a)'s requirement that an offender "use" physical force "against" another person. *See United States v. Trinidad-Aquino*, 259 F.3d 1140, 1145-46 (9th Cir. 2001). Our reasoning was that recklessness "requires conscious disregard of a risk of a harm that the defendant is aware of." *Id.* at 1146. On similar grounds, we held that offenses requiring "criminal negligence" could be crimes of violence. *See Park v. INS*, 252 F.3d 1018, 1024-25 (9th Cir. 2001). By contrast, we held that crimes of simple negligence lacked the volitional element necessary for crimes of violence. *Trinidad-Aquino*, 259 F.3d at 1145.

Recently, however, we cast doubt on our cases distinguishing recklessness and criminal negligence from simple negligence. In *Lara-Cazares v. Gonzales*, 408 F.3d 1217 (9th Cir. 2005), a Mexican citizen and national had previously been convicted under California law of gross vehicular manslaughter while intoxicated. *Id.* at 1219. Although this conviction required a minimum culpability of "gross negligence," an IJ found the underlying offense to have been a crime of violence under 18 U.S.C. § 16 and ordered the alien's removal. *Lara-Cazares*, 408 F.3d at 1219. The BIA affirmed, citing our cases holding that crimes of criminal negligence and recklessness could be crimes of violence. *Id.*

We reversed on the basis of *Leocal*. *Id.* at 1222. In *Leocal*, the Supreme Court held that driving under the influence of alcohol (DUI) cannot be a crime of violence if the statute defining the offense "reach[es] individuals who were negligent or less." 543 U.S. at 13. Rejecting the government's argument "that *Leocal* add[ed] nothing to our analysis in *Trinidad-Aquino* and [did] not extend to gross negligence," we held that gross negligence "does not constitute the kind of *active* employment of force against another that *Leocal* requires for a crime of violence." *Lara-Cazares*, 408 F.3d at 1221. Although the facts of *Lara-Cazares* did not require us to discuss in detail the implications of *Leocal* for crimes of criminal negligence or recklessness, we concluded that *Leocal*

abrogated our holdings in *Park* and *Ceron-Sanchez. See id.* at 1222 ("To the extent that our decision in *Park v. INS*, 252 F.3d 1018 (9th Cir. 2001), and the cases there cited [including *Ceron-Sanchez*] support a contrary result, we conclude that they are no longer good law in light of *Leocal*.").

Nonetheless, shortly after deciding *Lara-Cazares*, we relied on *Ceron-Sanchez* to hold a crime of recklessness—second-degree assault under Washington law—a categorical crime of violence. *See United States v. Hermoso-Garcia*, 413 F.3d 1085, 1089 (9th Cir. 2005) (Bea, J.). In doing so, we failed to distinguish *Lara-Cazares* or *Leocal. See id.*

**[5]** Because our existing precedent is inconsistent, we must examine the reasoning of *Leocal* to decide the present case.

## B. *Leocal*

### 1. Reasoning of *Leocal*

**[6]** In determining that DUI offenses requiring a *mens rea* of mere negligence or less cannot be "shoehorn[ed]" into the federal definition of a crime of violence, *Leocal*, 543 U.S. at 13, the Supreme Court emphasized that 18 U.S.C. § 16(a) requires the " 'use . . . of physical force *against the person or property of another*,' " *Leocal*, 543 U.S. at 9 (quoting 18 U.S.C. § 16(a)). Whereas the word "use," taken alone, could "in theory" connote the accidental employment of force, it would be "much less natural to say that a person actively employs [*i.e.*, uses] physical force against another person by accident." *Id.* Thus, the Court reasoned, 18 U.S.C. § 16(a)'s requirement that force be used "against" someone or something suggested that crimes of violence require "a higher degree of intent than negligent or *merely accidental* conduct." *Leocal*, 543 U.S. at 9 (emphasis added).

As further support for the conclusion that 18 U.S.C. § 16 does not reach merely accidental offenses, the Court looked

to the ordinary meaning of the term "crime of violence." *See Leocal*, 543 U.S. at 11. That term, the Court observed, naturally suggests a category of crimes more "violent" and "active" than DUI offenses. *Id.*

The Court also remarked that, because courts must interpret 18 U.S.C. § 16 consistently in both criminal and noncriminal cases, the rule of lenity applies. *Leocal*, 543 U.S. at 11 n.8. Under this rule, to whatever extent 18 U.S.C. § 16's definitions of a crime of violence lack clarity, courts should construe the ambiguous statutory language against the government. *Leocal*, 543 U.S. at 11 n.8.

### 2. Recent Interpretations of *Leocal*

**[7]** Although the Court in *Leocal* expressly reserved the question whether crimes of violence can include offenses involving the reckless use of force, *see id.* at 384, two of our sister circuits have interpreted the reasoning of *Leocal* to place such offenses beyond the reach of 18 U.S.C. § 16.[8]

In *Bejarano-Urrutia v. Gonzales*, 413 F.3d 444 (4th Cir. 2005), a native and citizen of Mexico petitioned for review of an order that he be removed from the United States for having committed involuntary manslaughter by driving intoxicated. *Id.* at 445. The Virginia statute of conviction required reckless disregard for human life, but not necessarily reckless disregard for whether force would be used. *Id.* at 447. Thus, the court was not required to decide whether offenses requiring the reckless use of force, or reckless disregard for a risk that force might be used, can be crimes of violence. *See id.* Nevertheless, the court deemed *Leocal* controlling:

---

[8]In so doing, these circuits joined three other circuits that, even before *Leocal*, restricted the category of crimes of violence under 18 U.S.C. § 16 to crimes requiring specific intent to use force against a person or property. *See Jobson v. Ashcroft*, 326 F.3d 367, 373-74 (2d Cir. 2003); *Bazan-Reyes v. INS*, 256 F.3d 600, 610-11 (7th Cir. 2001); *United States v. Chapa-Garza*, 243 F.3d 921, 926-27 (5th Cir. 2001).

> [T]he conclusion of the *Leocal* Court that "[i]n no 'ordinary or natural' sense can it be said that a person risks having to 'use' physical force against another person in the course of operating a vehicle while intoxicated and causing injury" strongly indicates that the result in *Leocal* would have been the same even had a violation of the statute there at issue required recklessness rather than mere negligence.

*Id.* (citation omitted). Applying this reading of *Leocal*, the Fourth Circuit granted the petition for review. *Id.*

The Third Circuit has on three occasions endorsed a similar reading of *Leocal*—beginning with *Tran v. Gonzales*, 414 F.3d 464 (3d Cir. 2005). *Tran* involved the petition for review of a Vietnamese citizen ordered removed from the United States for having been convicted, under Pennsylvania law, of "conspiracy to commit reckless burning or exploding." *Id.* at 468. The *Tran* court began its assessment of whether reckless burning or exploding was a crime of violence by citing dictionary definitions of "use." *Id.* at 470. An "obvious commonality" among these definitions was that "the 'use' of force means more than the mere occurrence of force; it requires the intentional employment of that force, *generally to obtain some end*." *Id.* (emphasis added).

In concluding that mere recklessness was insufficient under such a standard, the *Tran* court expressly disagreed with our decision in *Trinidad-Aquino*. *Id. Trinidad-Aquino*, the court suggested, could not be reconciled with the Supreme Court's emphasis in *Leocal* that " 'use' requires *active* employment." *Id.* (quoting *Leocal*, 543 U.S. at 9 (emphasis added)). Accordingly, the court granted Tran's petition for review. *Id.* at 473.

The Third Circuit reaffirmed its interpretation of *Leocal* in another immigration case, *Popal v. Gonzales*, 416 F.3d 249 (3d Cir. 2005). In *Popal*, the offense at issue was Pennsylvania's misdemeanor simple assault offense. *Id.* at 253. The stat-

ute of conviction required a minimum culpability of recklessness. *Id.* at 254.[9] In granting the petition for review, the *Popal* court both reaffirmed the reasoning of *Tran* and rejected a contrary argument based on the legislative history of 18 U.S.C. § 16(a). *See Popal*, 416 F.3d at 254-55.

A Senate Report discussing the crime of violence definition now codified at 18 U.S.C. § 16(a) suggested this definition "would include a threatened or attempted simple assault or battery on another person." S. Rep. No. 98-225, at 307 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3487. In reference to this suggestion, the *Popal* court stated:

> We acknowledge that the legislative history of § 16(a) provides some support for the government's theory that that section encompasses simple assault. Nonetheless, we do not think that this legislative history undermines our conclusion [that simple assault committed recklessly is not a crime of violence]. Instead, we think it likely that, when the drafters of § 16 mentioned simple assault as an exemplary crime of violence, they had in mind traditional common-law simple assault, defined as a crime "committed by either a willful attempt to inflict injury upon the person of another, or by a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." The common law thus required 'wilfullness,' i.e., intent, in order to find a defendant guilty of simple assault. It is entirely plausible that this definition might have been Congress's referent in discussing § 16(a).

---

[9]The statute was nearly identical to the one at issue here. It provided, "A person is guilty of assault if he: (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another . . . ." 18 Pa. Cons. Stat. § 2701(a).

*Popal*, 416 F.3d at 254 n.5 (citations omitted).

Finally, and perhaps most persuasively, the Third Circuit interpreted the reasoning of *Leocal* to reach crimes of recklessness in *Oyebanji v. Gonzales*, 418 F.3d 260 (3d Cir. 2005). *Oyebanji* involved a Nigerian citizen who faced removal for a New Jersey vehicular homicide conviction. *Id.* at 261-62. The statute of conviction required proof of recklessness—defined in part as "consciously disregard[ing] a substantial and unjustifiable risk that [a] material element [of an offense] exists or will result from [the actor's] conduct." *Id.* at 263 n.4 (quoting N.J. Stat. Ann. § 2C:2-2(3)). The court concluded that *Leocal* controlled primarily because of *Leocal*'s repeated emphasis that crimes of violence cannot be "accidental." *See id.* at 263-64.

The term "accidental," the court explained, "is most often used to describe events that did not 'occur [ ] as a result of anyone's purposeful act.' " *Id.* at 264 (quoting *Black's Law Dictionary* 16 (8th ed. 2004)) (alteration in original). As such, even though New Jersey's definition of recklessness involved conscious disregard of a substantial and unjustifiable risk, the reckless use of force was not sufficiently "intentional" to prevent an offense from being accidental. *See id.* ("[W]e cannot overlook the Court's repeated statement that 'accidental' conduct (*which would seem to include reckless conduct*) is not enough to qualify as a crime of violence." (emphasis added)).

As in *Popal*, the court in *Oyebanji* acknowledged that "reasonable arguments can be made in support of the proposition that" crimes of recklessness may be crimes of violence. *Id.* Nonetheless, the court interpreted *Leocal* to foreclose such arguments—at least at the circuit court level. *See id.* ("We recognize that there are plausible grounds for distinguishing *Leocal* and that reasonable arguments can be made in support of the proposition that Oyebanji's offense of conviction should be viewed as a crime of violence. But as a lower fed-

eral court, we are advised to follow the Supreme Court's 'considered dicta.' ") (citation omitted).

### 3. Teachings of *Leocal*

**[8]** We agree with our sister circuits that the reasoning of *Leocal*—which merely holds that using force negligently or less is not a crime of violence—extends to crimes involving the reckless use of force.

**[9]** Citing with approval our holding in *Trinidad-Aquino* that crimes of violence must have a volitional element and so cannot include crimes of negligence, the *Leocal* Court went a step further: the Court not only endorsed the position that crimes of violence must be volitional but also repeatedly emphasized that such crimes cannot be "accidental." *See Leocal*, 543 U.S. at 8-10; *see also Lara-Cazares*, 408 F.3d at 1221 (rejecting the argument that *Leocal* adds nothing to *Trinidad-Aquino*). "Accidental" means "[n]ot having occurred as a result of anyone's purposeful act." *Black's Law Dictionary* 16 (8th ed. 2004). "Purposeful" means "[d]one with a specific purpose in mind; DELIBERATE." *Id.* at 1272. Reckless conduct, as generally defined, is not purposeful. *See id.* at 1298 (defining recklessness as "[c]onduct whereby the actor *does not desire harmful consequence* but nonetheless foresees the possibility and consciously takes the risk" (emphasis added)). Even more clearly, reckless conduct as defined by Arizona law is not purposeful. *See* Ariz. Rev. Stat. § 13-105(9)(c) (defining recklessness as "consciously disre-gard[ing] a substantial and unjustifiable risk that the result will occur or that the circumstance exists," and providing that "[a] person who creates such a risk *but is unaware of such risk solely by reason of voluntary intoxication* also acts reck-lessly" (emphasis added)). Thus, the reckless use of force is "accidental" and crimes of recklessness cannot be crimes of violence. *See Oyebanji*, 418 F.3d at 264; *Tran*, 414 F.3d at 470-71.

**[10]** Contrary to the dissent, for purposes of 18 U.S.C. § 16, we see no "important differences between negligence and recklessness." *See* Dissent Op. at 17890. To the extent recklessness differs from criminal negligence, "[t]he difference between them is that criminal negligence requires only a failure to perceive a risk, as compared to the recklessness requirement of an awareness and conscious disregard of the risk." *In re William G.*, 963 P.2d 287, 292 n.1 (Ariz. Ct. App. 1997); *accord* 1 Charles E. Torcia, Wharton's Criminal Law § 27 (15th ed. 1993). But this subjective awareness of possible injury is not the same as the *intentional* use of physical force against the person of another. Neither gross negligence in failing to perceive, nor conscious disregard of a substantial and unjustifiable risk of injury implies that physical force is instrumental to carrying out the crime, such as the plain meaning of the word "use" denotes. *See Leocal*, 543 U.S. at 10 ("The reckless disregard in § 16 relates *not* to the general conduct or to the possibility that harm will result from a person's conduct, but to the risk that the use of physical force might be required in committing a crime."). Therefore, neither recklessness nor gross negligence is a sufficient mens rea to establish that a conviction is for a crime of violence under § 16.

As the Court suggested in *Leocal*—and as illustrated by considering the full range of conduct proscribed by Arizona Revised Statutes § 13-1203(A)(1)—any other conclusion would "blur the distinction between the 'violent' crimes Congress sought to distinguish for heightened punishment and other crimes." *Leocal*, 543 U.S. at 11. Under the language of Arizona Revised Statutes § 13-1203(A)(1), a wife and mother could be convicted of assault and domestic violence under Arizona law by recklessly running a stop sign and causing a traffic accident that injured her passenger-husband and child. Indeed, a person could be convicted of assault under Arizona Revised Statutes § 13-1203(A)(1) by running a stop sign "solely by reason of voluntary intoxication" and causing physical injury to another. Ariz. Rev. Stat. § 13-

105(9)(c). Such conduct cannot, in the ordinary sense, be called "active" or "violent." *Leocal*, 543 U.S. at 11.[10]

---

[10]The dissent calls the above hypotheticals "absurd." Dissent Op. at 17885. However, our example of running a stop sign is similar to actual cases where a defendant has been convicted of aggravated assault. *See State v. Miles*, 123 P.3d 669, 671 (Ariz. Ct. App. 2005) (sustaining conviction for aggravated assault under Arizona Revised Statutes § 13-1204(A)(1)—which requires a violation of Arizona Revised Statutes § 13-1203—of a man who ran a stop sign and caused an accident that injured his passenger); *State v. Freeland*, 863 P.2d 263, 265-66 (Ariz. Ct. App. 1993) (affirming aggravated assault conviction "prosecuted on the theory that defendant, by driving while intoxicated and causing a collision, recklessly caused serious injury to his victim"). Moreover, the dissent fails to cite us to, nor are we aware of, any authority suggesting that Arizona Revised Statutes § 13-1203(A)(1) cannot reach the conduct described in our hypothetical examples. Accordingly, our categorical analysis must address such conduct.

The dissent leads its argument with the trenchant phrase "[m]en do not beat their wives by accident." Dissent Op. at 17879. True. But the terms of Arizona Revised Statutes § 13-3601(A) do not require, and the judicially noticeable documents in the record do not prove, that Fernandez-Ruiz beat his wife. Rather, *whether* our record shows a conviction under such a statute requires a beating, and *whether* the documents of conviction show a beating took place, are the precise issues before us. Instead of looking to the record, the dissent would infer that wife-beating took place from the "trust and related vulnerability that characterize domestic relationships." Dissent Op. at 17883. The dissent does not explain how, within the confines of *Taylor*, the perpetrator's mere domestic relationship to the victim proves that he intentionally used force against her. The statute's title is not enough. *See Baron-Medina*, 187 F.3d at 1146 ("We look solely to the statutory definition of the crime, *not to the name given to the offense* or to the underlying circumstances of the predicate conviction.") (emphasis added).

Further, it is a commonplace of the criminal law that the confidential relationship that exists between the perpetrator and the victim cannot supply the proof of the requisite element of the mens rea with which an act was done. Were a husband to take his wife's car without her consent, the "trust and vulnerability" of the wife would not automatically supply the proof of the husband's intent permanently to deprive her of possession of the car, so as to convert misdemeanor joy-riding into felony car theft.

Finally, because the text of 18 U.S.C. § 16(a) is sufficiently clear, we see no need in this case to employ legislative history as an interpretive aid. *See, e.g.*, *United States v. Meek*, 366 F.3d 705, 719 (9th Cir. 2004) ("We need not factor in legislative history because the meaning of the statute is clear from the text."). The requirement that the offense have "as an element, the *use . . .* of physical force *against* the person or property of another," 18 U.S.C. § 16(a) (emphasis added), implies the use of force must be a means to an end.[11]

---

[11]The dissent relies on the Senate Judiciary Committee Report accompanying the enactment of the Comprehensive Crime Control Act of 1984. *See* Dissent Op. at 17891 (citing S. Rep. No. 98-225, at 307 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3486-87). This report cites "battery" as an example of a crime of violence within the meaning of § 16(a). *See* S. Rep. No. 98-225, at 307 & n.12. Since battery as defined by the Model Penal Code may be accomplished through recklessness, the dissent asserts that Congress intended § 16 to include reckless conduct. *See* Dissent Op. at 17892.

Since the statutory language is clear, we need not look to a report issued by one chamber of Congress as evidence of the statute's meaning. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 267 (2004) (Scalia, J., concurring) ("[I]t is not only . . . improper but also quite unnecessary to seek repeated support in the words of a Senate Committee Report —which, as far as we know, not even the full committee, much less the full Senate, much much less the House, and much much much less the President who signed the bill, agreed with.").

Even if we do consider the legislative history, it is far from clear that Congress intended § 16(a) to reach reckless conduct. The Senate Report cites 18 U.S.C. § 113(d) (1976) in a footnote to the term "battery." *See* S. Rep. No. 98-225, at 307 n.12. Presumably, the Committee had § 113(d) in mind when it referred to battery. Yet, at least at the time of § 16's enactment, § 113(d) was a "general intent" crime. *See United States v. Knife*, 592 F.2d 472, 481-82 & n.12 (8th Cir. 1979) ("The element of intent in § 113(f)"—defined as an assault under § 113(d) that results in serious bodily injury—"is satisfied if the general intent to commit the acts of assault arose when [defendant] initially approached [the victim]."); *United States v. Martin*, 536 F.2d 535, 535-36 (2d Cir. 1976) (per curiam) (finding the mental element of § 113(d) to be adequately proven where "the magistrate found an intent to strike and to scuffle"). Both these cases involve facts showing an intent to strike the victim, not merely the creation of such risk. We therefore doubt that "general intent" under § 113(d) includes reckless

**[11]** For these reasons, we hold that the offense underlying Fernandez-Ruiz's 2003 misdemeanor domestic violence conviction was not a categorical crime of violence under 18 U.S.C. § 16(a) or, by extension, a categorical crime of domestic violence under 8 U.S.C. § 1227(a)(2)(E)(i). The bedrock principle of *Leocal* is that to constitute a federal crime of violence an offense must involve the intentional use of force against the person or property of another. In light of *Leocal*, we expressly overrule our cases holding that crimes of violence under 18 U.S.C. § 16 may include offenses committed through the reckless, or grossly negligent, use of force.

## IV. Crime of Domestic Violence: Modified Categorical Analysis

**[12]** When a petitioner's state statute of conviction does not define a categorical crime of violence, we apply a "modified categorical approach." *See Penuliar v. Gonzales*, 435 F.3d 961, 966 (9th Cir. 2006); *Ruiz-Morales*, 361 F.3d at 1222. Under this approach, we consider whether any of a limited, specified set of documents—including "the state charging document, a signed plea agreement, jury instructions, guilty pleas, transcripts of a plea proceeding and the judgment" (sometimes termed "documents of conviction")—show the petitioner's conviction entailed an admission to, or proof of, the necessary elements of a crime of violence. *Hernandez-Martinez v. Ashcroft*, 343 F.3d 1075, 1076 (9th Cir. 2003).

**[13]** Here, with respect to Fernandez-Ruiz's 2003 misdemeanor domestic violence conviction, the record contains three documents relevant to our modified categorical assess-

---

conduct, and find the dissent's argument from legislative history unconvincing. *See also Popal*, 416 F.3d at 254 n.5 (rejecting for a similar reason the government's argument that the same legislative history shows an intent to include reckless conduct in § 16(a)'s definition of a crime of violence).

ment: the complaint, the judgment, and a pro forma plea agreement. The government concedes, as it must, that none of these documents demonstrates that Fernandez-Ruiz's conviction was based upon an admission, or any other proof, that he used force "intentionally" or "knowingly," as opposed to "recklessly." Ariz. Rev. Stat. § 13-1203(A)(1). Accordingly, on the record now before us, we cannot conclude under the modified categorical approach that Fernandez-Ruiz committed a crime of violence or, by extension, a crime of domestic violence as defined by federal law.

Although the government concedes we cannot now reach such a conclusion, it asks us to defer applying the modified categorical approach and instead remand this case to the BIA for further development of the record. As support for its request, the government supplies only a cursory citation to *INS v. Ventura*, 537 U.S. 12 (2002) (per curiam). *Ventura*, however, is inapplicable.

*Ventura* involved the asylum application of Orlando Ventura, a citizen of Guatemala. *Id.* at 14. The IJ and the BIA determined that Ventura was ineligible for asylum because he had failed objectively to demonstrate past persecution for a political opinion. *Id.* at 15. Because Ventura had not made this required threshold showing, the BIA noted it did not need to address whether "changed country conditions" rebutted Ventura's claim to a well-founded fear of future persecution. *Id.*

We reversed the BIA's decision. *Id.* First, we concluded the evidence compelled a finding that Ventura had demonstrated past persecution for a political opinion; he had therefore established the presumption of a well-founded fear of future persecution. *Id.* Having reached this conclusion, we rejected requests from both parties that we remand the case to the BIA for consideration of changed country conditions. *Id.* Although we "recognized that the BIA had not decided the 'changed circumstances' question and that 'generally' a court should

remand to permit that consideration," we invoked an exception to the usual rule: A court "need 'not remand . . . when it is clear that [it] would be compelled to reverse the BIA's decision if the BIA decided the matter against the applicant.' " *Id.* (quoting *Ventura v. INS*, 264 F.3d 1150, 1157 (9th Cir. 2001)). This exception applied in *Ventura*, we concluded, because a 1997 State Department report about Guatemala "clearly demonstrate[d] that the presumption of a well-founded fear of future persecution was not rebutted." *Id.* (quoting *Ventura v. INS*, 264 F.3d 1150, 1157 (9th Cir. 2001)).

The Supreme Court reversed our decision not to remand. *Id.* at 18. The Court gave two reasons why the exception we had invoked to the "ordinary remand" rule did not apply. *Id.* at 17. First, "the State Department report [was], at most, ambiguous" as to whether conditions in Guatemala were sufficiently changed to rebut the presumption of Ventura's well-founded fear of future persecution. *Id.* "Second, remand could [have led] to the presentation of further evidence of current circumstances in Guatemala—evidence that [could] well [have] prove[d] enlightening given the five years that [had] elapsed since the report was written." *Id.* at 18. Under the circumstances, invoking the exception to the ordinary remand rule violated several "basic considerations" of administrative law: that, for "a matter that statutes place primarily in agency hands," an agency should be permitted to "bring its expertise to bear"; that the agency "can evaluate the evidence"; and that the agency can "make an initial determination." *Id.* at 16-17.

Neither of the *Ventura* Court's principal reasons for deciding we should have applied the ordinary remand rule applies in the present case. First, whereas the State Department report at issue in *Ventura* was "ambiguous," *id.* at 17, the documents of conviction in the record here—as the government itself concedes—cannot possibly be interpreted to establish that Fernandez-Ruiz used force against his victim intentionally or knowingly, rather than recklessly. Second, unlike in *Ventura*,

there is no possibility here that new evidence has developed in the years since the BIA's erroneous decision: Fernandez-Ruiz was convicted in January 2003, and all relevant documents of conviction became available before the DHS initiated removal proceedings.

Moreover, the "basic considerations" of administrative law that favored a remand in *Ventura* do not apply with equal force here. Unlike *Ventura*, the present case does not involve an issue the law commits to the agency's expertise. *See, e.g.*, *Oyebanji*, 418 F.3d at 262 ("[T]he BIA is not charged with administering 18 U.S.C. § 16 and has no special expertise regarding the interpretation of that criminal statute . . . ."); *Singh*, 386 F.3d at 1230 ("We reject the . . . assertion that we owe 'substantial deference' to the Attorney General's interpretations of general state and federal criminal statutes."). Another distinction is that *Ventura* undeniably involved an issue the BIA had not considered: whether changed country conditions rebutted the presumption of the defendant's well-founded fear of future persecution. Here, by contrast, whether the offense underlying Fernandez-Ruiz's 2003 conviction was a crime of domestic violence under federal law is an issue the BIA has already addressed—albeit under the categorical approach, rather than the modified categorical approach. *Ventura*, 537 U.S. at 17. Finally, the standard of review differs. In *Ventura*, had we remanded to the BIA for a finding on changed country conditions, we would have reviewed any such finding under the substantial evidence standard. *See Smolniakova v. Gonzales*, 422 F.3d 1037, 1052 (9th Cir. 2005). Here, we review de novo whether a conviction constitutes an aggravated felony. *See, e.g.*, *Penuliar*, 435 F.3d at 966. After remanding this issue to the BIA, we would not "later determine whether [the BIA's] decision exceeds the leeway that the law provides." *Ventura*, 537 U.S. at 17.

Our conclusion that *Ventura* does not apply in the present case is consistent with *Notash v. Gonzales*, 427 F.3d 693 (9th Cir. 2005). In *Notash*, the petitioner had a prior conviction for

"attempted entry of goods by means of a false statement." *Id.* at 695. The government contended this offense was a "crime involving moral turpitude," such that the petitioner's conviction rendered him removable. *Id.* In proceedings before an IJ, the petitioner "explained that, when completing his customs declaration form, he had left a line relating to foreign goods blank because he was not sure how to declare the items." *Id.* He argued that "although crimes involving fraud generally are considered to involve moral turpitude, crimes involving false statements are not categorically considered to involve moral turpitude"; "his offense," he claimed, "did not involve 'clear deceit' [or] an attempt to obtain a property interest to which he was not entitled." *Id.* The IJ disagreed, applying the categorical approach without reaching the modified categorical approach, and the BIA affirmed without an opinion. *See id.* We rejected the agency's assessment that the petitioner had committed a categorical crime involving moral turpitude. *See id.* at 697-98. We then granted the petition for review, holding that, because "none of the documents that may be examined under the modified categorical approach were in the record," the government had "failed to meet its burden of proving that the offense for which [the petitioner] was convicted" constituted a crime involving moral turpitude. *Id.* at 699-700. Notably, we reached this conclusion without first remanding the case for the government to introduce new evidence or the agency to apply the modified categorical approach. *See id.*

Admittedly, *Notash* is not perfectly analogous to the present case. At the time of the agency proceedings in *Notash*, there was no Ninth Circuit precedent establishing that the petitioner's statute of conviction defined a categorical crime involving moral turpitude. *See id.* at 698 (explaining that the agency had based its decision on Supreme Court and agency precedent, not Ninth Circuit precedent). By contrast, when Fernandez-Ruiz's agency proceedings took place in 2003, it was a matter of settled law in our circuit that violations of his statute of conviction, Arizona Revised Statutes § 13-

1203(A)(1), were categorical crimes of violence. *See Ceron-Sanchez*, 222 F.3d at 1172-73.

In light of *Ceron-Sanchez*, we can imagine an argument that, at the time of Fernandez-Ruiz's agency proceedings, the government could not have anticipated the need to build a record supporting removal under the modified categorical approach. If the government relied on *Ceron-Sanchez* when determining what documents to introduce before the agency, our decision to overrule *Ceron-Sanchez* could at least conceivably constitute an unusual, unforeseeable circumstance justifying remand.

**[14]** We need not now decide whether changes in our law may ever justify remanding a case for further development of the administrative record because the government has not argued that, in reliance on *Ceron-Sanchez*, it failed to anticipate the necessity of introducing documents of conviction demonstrating Fernandez-Ruiz's offense was a crime of domestic violence under the modified categorical approach. We consider the government's reticence significant, but predictable: the record includes evidence suggesting the government *did* recognize the need to present documents of conviction in case it lost under the categorical approach. Beyond the bare-bones documents needed to show Fernandez-Ruiz had a prior conviction—the complaint and the judgment—the government presented the agency with Fernandez-Ruiz's plea agreement. On these facts, new developments in the law do not warrant a remand.

**[15]** In sum, even under the modified categorical approach, Fernandez-Ruiz's 2003 conviction under Arizona Revised Statutes §§ 13-1203 and 13-3601 for misdemeanor domestic violence assault is not a crime of violence as defined by 18 U.S.C. § 16(a). Accordingly, taken alone, the subject conviction cannot justify his removal. *See* 8 U.S.C. § 1227(a)(2)(E)(i).

## V.  Remedy

**[16]** Our decision that Fernandez-Ruiz is not removable under 8 U.S.C. § 1227(a)(2)(E)(i) necessitates consideration of issues the panel did not decide. *See Fernandez-Ruiz*, 410 F.3d at 588 n.2. Although an en banc court takes a case, not an issue, en banc, it has the discretion to decide the entire case or only the parts of the case that formed the basis for the en banc call. *Summerlin v. Stewart*, 309 F.3d 1193, 1193 (9th Cir. 2002). It may make that decision either prior to or after the en banc argument. Here, having resolved the issue that the panel asked the court to consider in its sua sponte en banc call, *see* G.O. 5.4.c.3, we believe it better to return the case to the panel for resolution of the remaining issues.

**RETURNED TO THE PANEL FOR THE ISSUANCE OF AN OPINION REGARDING THE REMAINING ISSUES.**

---

KOZINSKI, Circuit Judge, concurring in part, dissenting in part:

I agree that the government hasn't shown Fernandez-Ruiz committed a crime of domestic violence under 18 U.S.C. § 16(a) on this record. I reach this conclusion substantially for the reasons stated in the majority opinion, and because I would not lightly disregard the view of five other circuits that have considered the issue. *See Tran* v. *Gonzales*, 414 F.3d 464, 471-72 (3d Cir. 2005); *Bejarano-Urrutia* v. *Gonzales*, 413 F.3d 444, 447 (4th Cir. 2005); *Jobson* v. *Ashcroft*, 326 F.3d 367, 372-73 (2d Cir. 2003); *Bazan-Reyes* v. *INS*, 256 F.3d 600, 609-10 (7th Cir. 2001); *United States* v. *Chapa-Garza*, 243 F.3d 921, 925-27 (5th Cir. 2001). I find the dissent's effort to carve out a special rule for domestic violence cases unpersuasive.

However, I cannot agree with the majority's refusal to send the case back to the BIA for reconsideration in light of our opinion. The government presented its case both to the IJ and the BIA when our caselaw was controlled by *United States* v. *Ceron-Sanchez*, 222 F.3d 1169 (9th Cir. 2000), and before the Supreme Court decided *Leocal* v. *Ashcroft*, 543 U.S. 1 (2004). Under that regime, the government had no reason to present evidence that would sustain its burden under a modified categorical approach. Now that the law has changed, the government is entitled to make its case under the new standard.

I realize that *INS* v. *Ventura*, 537 U.S. 12, 17 (2002) (per curiam), and *Gonzales* v. *Thomas*, 126 S. Ct. 1613, 1615 (2006) (per curiam), are not on all fours because both involved questions as to which the agency had special expertise. But *Ventura* also held that, when an opinion changes the legal landscape, giving the government an opportunity to "present[ ] . . . further evidence" is an independent ground for a remand. 537 U.S. at 18. I see no reason to do otherwise here. If the government has no such evidence, a remand will do no harm. But, if the government does have or can obtain such evidence, our refusal to remand will mean that someone Congress meant to have deported may remain at large in the United States, perhaps to offend again.

Having twice been summarily reversed for failing to remand to this very agency, I would tread especially lightly in this area. Discretion, in this case, is not only the better part of valor, but the better part of justice as well.

---

WARDLAW, Circuit Judge, with whom Circuit Judges O'SCANNLAIN, BYBEE, and CALLAHAN join dissenting:

Men do not beat their wives by accident. Blind to this truth, the majority ignores the realities of domestic violence and disregards congressional intent to hold that an Arizona domestic

violence conviction is not a "crime of domestic violence" for purposes of a federal immigration law. The majority's hyper-technical analysis stretches the *Taylor v. United States*, 495 U.S. 575 (1990), categorical approach to absurdity and mis-reads *Leocal v. Ashcroft*, 543 U.S. 1 (2004), as barring all crimes involving the reckless use of force from qualifying as "crimes of violence" under 18 U.S.C. § 16. I respectfully dissent.

# I

On January 13, 2003, Jose Roberto Fernandez-Ruiz, a native and citizen of Mexico and a lawful permanent resident of the United States, pled guilty in Arizona state court to misdemeanor domestic violence/disorderly conduct and misdemeanor domestic violence/assault. He was sentenced to six months in jail and three years of probation. Fernandez-Ruiz had previously been convicted of theft and domestic violence/assault and had twice violated his probation. His 2003 domestic violence/assault conviction, designated a class two misdemeanor, establishes that he violated either subsection (1) or (2) of Arizona Revised Statute (A.R.S.) § 13-1203(A), which states in relevant part:

> A person commits assault by:
>
> 1.  Intentionally, knowingly or recklessly causing any physical injury to another person; or
>
> 2.  Intentionally placing another person in reasonable apprehension of imminent physical injury . . . .

Because the record of conviction states that Fernandez-Ruiz committed a domestic violence offense, he must have been in a domestic relationship with his victim, as defined by A.R.S. § 13-3601(A):

> "Domestic violence" means any act which is a dangerous crime against children as defined in § 13-

604.01 or an offense defined in [any one of twenty Arizona statutes, including § 13-1203], if any of the following applies:

1.  The relationship between the victim and the defendant is one of marriage or former marriage or of persons residing or having resided in the same household.

2.  The victim and the defendant have a child in common.

3.  The victim or the defendant is pregnant by the other party.

4.  The victim is related to the defendant or the defendant's spouse by blood or court order as a parent, grandparent, child, grandchild, brother or sister or by marriage as a parent-in-law, grandparent-in-law, stepparent, step-grandparent, stepchild, step-grandchild, brother-in-law or sister-in-law.

5.  The victim is a child who resides or has resided in the same household as the defendant and is related by blood to a former spouse of the defendant or to a person who resides or who has resided in the same household as the defendant.

In March 2003, the Immigration and Naturalization Service sought to deport Fernandez-Ruiz for committing a crime of domestic violence. Under 8 U.S.C. § 1227(a)(2)(E)(i),

Any alien who at any time after admission is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment is deportable. For purposes of this clause, the term "crime of domestic violence" means any crime of violence (as defined in section

16 of Title 18) against a person committed by a current or former spouse of the person, by an individual with whom the person shares a child in common, by an individual who is cohabiting with or has cohabited with the person as a spouse, by an individual similarly situated to a spouse of the person under the domestic or family violence laws of the jurisdiction where the offense occurs, or by any other individual against a person who is protected from that individual's acts under the domestic or family violence laws of the United States or any State, Indian tribal government, or unit of local government.

Eighteen U.S.C. § 16(a) in turn defines a misdemeanor "crime of violence" as: "(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another."

Relying on our decision in *United States v. Ceron-Sanchez*, 222 F.3d 1169 (9th Cir. 2000), the BIA concluded that Fernandez-Ruiz's 2003 conviction was a "crime of domestic violence" and affirmed an immigration judge's decision ordering Fernandez-Ruiz deported. Fernandez-Ruiz petitions for relief from his deportation order on the ground that *Leocal* overruled *Ceron-Sanchez* and established that a conviction such as his, which may have been based on reckless conduct, is not categorically a crime of domestic violence. *See generally Taylor*, 495 U.S. at 600-02.

## II

Common sense, statutory language, and precedent all compel the conclusion that Fernandez-Ruiz's domestic violence conviction necessarily involved the use of physical force against the person of another and was therefore a crime of violence under 18 U.S.C. § 16(a) and a crime of domestic violence under 8 U.S.C. § 1227(a)(2)(E)(i).

## A

Notwithstanding the majority's attempt to erase the identity of Fernandez-Ruiz's victim and treat his crime as a simple assault, Fernandez-Ruiz was convicted for "domestic violence/assault," and the victim was Fernandez-Ruiz's girlfriend and the mother of his daughter. The relationship between Fernandez-Ruiz and his victim cannot be dismissed as irrelevant; it is an element of his crime, and under *Leocal* we are required "to look to the elements and the nature of the offense of conviction . . . ." 543 U.S. at 7. Instead of analyzing the nature of the offense of conviction, here a violation of A.R.S. § 13-3601(A), the majority analyzes A.R.S. § 13-1203(A), without addressing how the additional element of the crime described in § 13-3601(A) impacts the nature of the crime. The majority justifies this analytical leap by noting that the perpetrator-victim relationship that is an element of § 13-3601(A) is included as part of the definition of a crime of domestic violence under 8 U.S.C. § 1227(a)(2)(E)(i). Maj. Op. at 17860 n.5. However, what the majority does not explain is why the inclusion of similar language in a federal immigration law justifies ignoring an element of an Arizona criminal law under *Taylor* categorical analysis.

The majority's facile elision gives short shrift to Arizona's requirement that the victim be related to the perpetrator; the very existence of a separate statutory species of assault aimed at domestic violence demonstrates that the additional element of relationship is significant to the nature of the crime. One owes a special duty of care toward one's spouse and child, arising from the trust and related vulnerability that characterize domestic relationships. *See Grageda v. INS*, 12 F.3d 919, 922 (9th Cir. 1993) ("[A] spouse is committed to a relationship of trust with, and may be dependent upon, the perpetrator. This relationship makes the crime of spousal abuse different from violence between strangers or acquaintances . . . ."); *see also, e.g.*, Patricia Tjaden & Nancy Thoennes, Nat'l Inst. of Justice & Ctrs. for Disease Control & Preven-

tion, *Prevalence, Incidence, and Consequences of Violence Against Women: Findings from the National Violence Against Women Survey* 2 (1998) ("Violence against women is primarily partner violence: 76 percent of women who were raped and/or physically assaulted since age 18 were assaulted by a current or former husband, cohabiting partner, or date, compared with 18 percent of the men.").

It is precisely the vulnerability of those in domestic relationships, particularly women and children, that led Congress to enact 8 U.S.C. § 1227(a)(2)(E)(i), which is designed to protect victims and punish perpetrators of domestic violence. As Senator Robert Dole stated upon introducing the original version of the language that now appears at 8 U.S.C. § 1227(a)(2)(E)(i):

> [O]ur society will not tolerate crimes against women and children. . . . Nor should we have to wait for that last violent act. When someone is an alien and has already shown a predisposition toward violence against women and children, we should get rid of them the first time.

142 Cong. Rec. S4058-02, S4059 (1996) (statement of Sen. Dole); *see also* Violence Against Women Act of 1994, Pub. L. No. 103-322, §§ 40001-40703, 1994 U.S.C.C.A.N. (108 Stat.) 1796, 1902-55, *invalidated in part by United States v. Morrison*, 529 U.S. 598, 627 (2000). And it is this vulnerability that the majority pretends does not exist when it refuses to acknowledge the identity of Fernandez-Ruiz's victim and instead endeavors to sanitize Fernandez-Ruiz's crime by relegating to a footnote the fact that this is a crime of *domestic* violence. *See* Maj. Op. at 17860 & n.5. Instead of addressing Fernandez-Ruiz's crime of conviction, the majority sets out to rewrite the law for all crimes that may be committed with a mens rea of recklessness. *See* Maj. Op. at 17872 ("[W]e expressly overrule our cases holding that crimes of violence

under 18 U.S.C. § 16 may include offenses committed through the reckless, or grossly negligent, use of force.")

Fernandez-Ruiz did not accidentally cause his girlfriend and the mother of his daughter physical injury; he did so "[i]ntentionally, knowingly or recklessly." A.R.S. § 13-1203(A)(1). In light of the special duty of care Fernandez-Ruiz owed his victim, it is difficult to imagine how he could have committed his crime recklessly, and impossible to conclude he could have done so without using force against her. *Cf. Flores v. Ashcroft*, 350 F.3d 666, 672-73 (7th Cir. 2003) (Evans, J., concurring) (lamenting the absence of common sense in courts' application of the *Taylor* categorical approach and noting that "Flores actually beat his wife[;] . . . . [a] common-sense review here should lead one to conclude that Flores committed a 'crime of domestic violence' "). Domestic abusers may be drunk or otherwise incapacitated when they commit their crimes, and they may plea bargain down from a felony to a misdemeanor or from a statute that requires a mens rea of intentionality to one that can be satisfied by recklessness. But this does not alter the nature of domestic violence as a crime involving the use of force against someone in a domestic relationship, a crime that is categorically a "crime of domestic violence." *See* 8 U.S.C. § 1227(a)(2) (E)(i).

The majority seeks refuge from the plain meaning of domestic violence in hypotheticals suggesting that an Arizona domestic violence/assault conviction is not necessarily a crime of domestic violence. For example, the majority asserts a wife and mother could be convicted of domestic violence under Arizona law for "recklessly running a stop sign and causing a traffic accident that injured her passenger-husband and child." Maj. Op. 17869. This hypothetical is absurd. Under the *Taylor* categorical approach, we examine the full range of *conduct* encompassed by the statute at issue, *e.g.*, *Ceron-Sanchez*, 222 F.3d at 1172, not the full range of appellate judges' fanciful imaginings. Like all legal doctrines, the

*Taylor* categorical approach must be applied with reasoned judgment. *See United States v. Kaplansky*, 42 F.3d 320, 323-24 (6th Cir. 1994) (en banc) (employing a commonsense analysis of "the essence of kidnapping" in holding that a violation of an Ohio kidnapping statute, which prohibits removing a person from the place where he is found or restraining his liberty " 'by *force, threat, or deception*,' " is categorically a violent felony); *cf. id.* at 329-30 (Merritt, C.J., dissenting) (raising a series of improbable hypotheticals to argue that "it is possible for Kaplansky to have been convicted of . . . kidnapping without committing a violent felony"); *Flores*, 350 F.3d at 672-73.

Running a stop sign and causing a traffic accident with injury would not be prosecuted under the domestic violence law. Such conduct would almost certainly result in a traffic citation for—of all things—reckless driving. *See* A.R.S. § 28-693. Unsurprisingly, neither Fernandez-Ruiz nor the majority cite a single case in which Arizona has prosecuted conduct remotely like the proffered hypothetical as a domestic violence offense.[1]

### B

Even if Fernandez-Ruiz had been convicted of assaulting a stranger, as the majority would have us believe, he would still be deportable under 8 U.S.C. § 1227(a)(2)(E)(i) because recklessness is a sufficient mens rea for a crime of violence. The majority argues that *Leocal*, which explicitly declined to address whether recklessness is a sufficient mens rea for a

---

[1]In lieu of domestic violence prosecutions the majority offers two cases in which assault convictions were upheld when automobile passengers were injured. *See State v. Miles*, 123 P.3d 669, 675-76 (Ariz. Ct. App. 2005) (affirming aggravated assault conviction after acquittal of DUI); *State v. Freeland*, 863 P.2d 263, 265-66 (Ariz. Ct. App. 1993) (affirming aggravated assault conviction in DUI case). These cases do not even hint at prosecution for domestic violence.

crime of violence, overruled our consistent precedent on this issue. It did not.

In *Ceron-Sanchez*, we held that a conviction under A.R.S. § 13-1203(A)(1) was categorically a "crime of violence" for purposes of 18 U.S.C. § 16(a), reasoning that reckless conduct that causes physical injury necessarily involves the use of physical force. 222 F.3d at 1172-73. We expanded on this reasoning in *United States v. Trinidad-Aquino*, where we held that a negligent drunk driving offense did not qualify as a crime of violence, but explained "that recklessness is a sufficient mens rea for a 'crime of violence' " because

> recklessness requires conscious disregard of a risk of a harm that the defendant is aware of—a volitional requirement absent in negligence. A volitional definition of "use . . . against" encompasses conscious disregard of a potential physical impact on someone or something—it does not encompass non-volitional negligence as to that impact.

259 F.3d 1140, 1146 (9th Cir. 2001) (omission in original); *see also United States v. Hermoso-Garcia*, 413 F.3d 1085, 1089 (9th Cir. 2005) (reckless assault is categorically a crime of violence); *United States v. Grajeda-Ramirez*, 348 F.3d 1123, 1125 (9th Cir. 2003) (reckless vehicular assault is categorically a crime of violence).[2] This logic remains sound and forecloses Fernandez-Ruiz's argument that his conviction is not categorically a crime of domestic violence.

*Leocal*, which addressed a strict liability DUI offense, does not disturb our consistent precedent on this issue. The peti-

---

[2]*Lara-Cazares v. Gonzales*, in which we held that under *Leocal* a California conviction for gross vehicular manslaughter while intoxicated is not categorically a crime of violence, is inapposite both because it involved a DUI offense and because the statute at issue required only a mens rea of gross negligence. 408 F.3d 1217, 1221 (9th Cir. 2005).

tioner in *Leocal* violated a Florida statute making it a crime to operate a vehicle while under the influence and, "by reason of such operation, cause[ ] . . . [s]erious bodily injury to another." Fla. Stat. § 316.193(3)(c)(2). In determining that the conviction was not categorically a crime of violence for purposes of § 16(a), the Court noted that the Florida statute "does not require proof of any particular mental state" and emphasized that the

> critical aspect of § 16(a) is that a crime of violence is one involving the "use . . . of physical force *against the person or property of another*." . . . "[U]se" requires active employment. While one may, in theory, actively employ *something* in an accidental manner, it is much less natural to say that a person actively employs physical force against another person by accident. Thus, a person would "use . . . physical force against" another when pushing him; however, we would not ordinarily say a person "use[s] . . . physical force against" another by stumbling and falling into him. . . . The key phrase in § 16(a) . . . most naturally suggests a higher degree of intent than negligent or merely accidental conduct.

*Leocal*, 543 U.S. at 7, 9 (citations omitted) (first, third, and fourth omissions in original).

The "bedrock principle" of *Leocal* is not, as the majority asserts, that "an offense must involve the intentional use of force" to be a crime of violence, Maj. Op. at 17872, but rather that merely accidental or negligent DUI crimes are not crimes of violence. It is unclear whether *Leocal* extends beyond DUI offenses, and, in any event, it explicitly left open "the question whether a state or federal offense that requires proof of the *reckless* use of force against a person or property of another qualifies as a crime of violence under 18 U.S.C. § 16." 543 U.S. at 13. *Leocal* informs our analysis insofar as

it emphasizes that the key issue in determining whether a predicate conviction satisfies § 16(a) is whether the conviction involved an *active* employment of force. *See id.* at 11 (emphasizing that § 16 "suggests a category of violent, active crimes").

Fernandez-Ruiz's conviction necessarily involved an active employment of force. The minimum mens rea for a violation of A.R.S. § 13-1203(A)(1) is recklessness, which Arizona defines as,

> with respect to a result or to a circumstance described by a statute defining an offense, that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware of such risk solely by reason of voluntary intoxication also acts recklessly with respect to such risk.

A.R.S. § 13-105(9)(c). Fernandez-Ruiz therefore must have at least "consciously disregarded" the risk of physically injuring his girlfriend. Conscious disregard includes an element of volition: One must be aware of a substantial and unjustifiable risk and affirmatively choose to act notwithstanding that risk. *See Trinidad-Aquino*, 259 F.3d at 1145-46 (cited approvingly in *Leocal*, 543 U.S. at 9); *see also Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*, 739 F.2d 1434, 1435 (9th Cir. 1984) (per curiam) ("Rather than being merely a greater degree of ordinary negligence, recklessness is closer to a lesser form of intent." (internal quotation marks omitted)); *People v. Lara*, 44 Cal. App. 4th 102, 107-08 (1996). "Unlike a person who accidentally injures another person, a person who acts recklessly in bringing about harm to another is aware of the nature

of his conduct and thus can be said to be 'actively employ-[ing]' the physical force that results in injury 'against another.' " *Bejarano-Urrutia v. Gonzales*, 413 F.3d 444, 449-50 (4th Cir. 2005) (Niemeyer, J., dissenting) (quoting *Leocal*, 543 U.S. at 9, and citing *Trinidad-Aquino*, 259 F.3d at 1146). Recklessness thus requires a volitional, active decision, which necessarily involves "a higher degree of intent than negligent or merely accidental conduct," *Leocal*, 543 U.S. at 9, and satisfies § 16(a)'s "use . . . of physical force" requirement. Nothing in *Leocal* requires us to overrule *Ceron-Sanchez* or re-interpret *Trinidad-Aquino*.

In holding that recklessness is not a sufficient mens rea for a crime of violence, the majority misreads *Leocal*. The majority asserts that because (1) *Leocal* holds that accidental conduct cannot be a crime of violence, *see Leocal*, 543 U.S. at 9; (2) accidental conduct is by definition " '[n]ot . . . purposeful,' " Maj. Op. at 17868 (alteration in original) (quoting Black's Law Dictionary 16 (8th ed. 2004)); and (3) reckless conduct is also not purposeful; *Leocal* compels the conclusion that "the reckless use of force is 'accidental' and crimes of recklessness cannot be crimes of violence." Maj. Op. at 17868. This argument defies logic.

The fact that neither negligence nor recklessness is purposeful does not mean that they are identical, or that recklessness, like negligence, necessarily falls outside the scope of § 16(a). Recklessness is a distinct mens rea, which lies closer to intentionality than to negligence. *See Vucinich*, 739 F.2d at 1435. *Leocal*'s statement that "negligent or merely accidental conduct" does not satisfy § 16(a), 543 U.S. at 9, in no way suggests that intentional conduct is required or that recklessness is an insufficient mens rea for a crime of violence. *See Bejarano-Urrutia*, 413 F.3d at 449-500. Indeed, the *Leocal* Court specifically declined to decide that issue. *See* 543 U.S. at 13. The majority, like the opinions from the Third and Fourth Circuit on which it relies, ignores the important differences between negligence and recklessness and improperly

reads an intentionality requirement into *Leocal. See Oyebanji v. Gonzales*, 418 F.3d 260, 264-65 (3d Cir. 2005) (conviction for vehicular homicide based on driving under the influence); *Tran v. Gonzales*, 414 F.3d 464, 470-71 (3d Cir. 2005) (conviction for reckless burning or exploding); *Bejarano-Urrutia*, 413 F.3d at 447 (majority opinion) (conviction for involuntary manslaughter based on driving under the influence).[3]

Because the plain language of § 16(a) is clear, the rule of lenity does not apply, *see Lisbey v. Gonzales*, 420 F.3d 930, 933 (9th Cir. 2005); nor need we consult the statute's legislative history. Nevertheless, were we to look to legislative history, it would confirm that Fernandez-Ruiz's conviction is a crime of violence. The Senate Report accompanying the Comprehensive Crime Control Act of 1984, which enacted 18 U.S.C. § 16, states that a "crime of violence" under § 16(a) "would include a threatened or attempted simple assault or battery on another person." S. Rep. No. 98-225, at 307 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3486-87 (footnotes omitted). Congress thus intended to include both simple assault and battery in the definition of a "crime of violence." Battery is traditionally defined as "the unlawful application of force to the person of another," committed with a mental state of at least criminal negligence or recklessness. *See* Black's Law Dictionary 139 (5th ed. 1979); Model Penal Code § 211.1(1)(a) (a person is guilty of battery if he "purposely, knowingly or recklessly causes bodily injury to another");[4]

---

[3]The majority also incorrectly relies on a discussion of recklessness in the context of § 16(b) to bolster its argument that force must be instrumental in the execution of the crime to qualify as "use" under § 16(a). *See* Maj. Op. at 17869 (quoting *Leocal*, 543 U.S. at 10). In *Oyebanji*, the Third Circuit's analysis was also only of § 16(b). 418 F.3d at 264. Further, unlike the majority here, the Third Circuit did not make a blanket post-*Leocal* announcement about crimes with a recklessness mens rea. In each case that court examined the actual crime of conviction in reaching its conclusion.

[4]Section 211.1 is entitled "Assault" but incorporates the crime of battery. *See* 2 Am. Law Inst., Model Penal Code & Commentaries § 211.1 cmt.2, at 183-84 (1980).

Wayne R. LaFave, Substantive Criminal Law § 16.2 (2d ed. 2003) (similar). A violation of the Arizona statute at issue, which incorporates the Model Penal Code's definition of battery, *see* A.R.S. § 13-1203(A); *State v. Mathews*, 633 P.2d 1039, 1042 (Ariz. Ct. App. 1981), is therefore categorically a "crime of violence" as that term is used in § 16(a). To read the legislative history otherwise, to suggest that Congress intended simple assault but not battery to be a "crime of violence," is both incorrect and leads to an awkward result: An alien would be removable for attempting or threatening to harm someone but not for actually injuring his spouse through reckless conduct. It is unlikely Congress intended such an outcome.

## C

After mistakenly concluding that Fernandez-Ruiz's conviction was not categorically a crime of violence, the majority compounds its error by refusing the government's request that we remand to the BIA to allow the government to further develop the record so that the BIA may apply the modified categorical approach. The BIA never decided whether Fernandez-Ruiz's conviction was a crime of violence under the modified categorical approach because, until the majority's decision today, Fernandez-Ruiz's conviction was categorically a crime of violence. *See Ceron-Sanchez*, 222 F.3d 1169. For the same reason, the government had no reason to identify, obtain, or introduce evidence demonstrating that Fernandez-Ruiz "use[d] . . . physical force against the person or property of another" and therefore that his 2003 conviction was a crime of domestic violence under the majority's highly restrictive approach.

In light of the new rule the majority announces, the proper course is to remand to the BIA so that it may apply the modified categorical approach in the first instance. *See Gonzales v. Thomas*, 126 S. Ct. 1613, 1614-15 (2006) (per curiam); *INS v. Ventura*, 537 U.S. 12, 16-17 (2002) (per curiam). As the

majority concedes, *Notash v. Gonzales* is inapposite because, unlike here, there was no intervening change in law that made the modified categorical approach relevant where it had not been so before and therefore justified the government's failure to introduce evidence relevant to the modified categorical approach. 427 F.3d 693 (9th Cir. 2005). Nor is there any merit in the majority's entirely unsupported assertion that the government has waived its right to a *Ventura* remand because it has not specifically stated that "it failed to anticipate the necessity of introducing documents of conviction demonstrating Fernandez-Ruiz's offense was a crime of domestic violence under the modified categorical approach." Maj. Op. at 17877.

\* \* \* \*

Consistent with the plain language of 18 U.S.C. § 16(a), Congress's intent, and our precedent, I would hold that a conviction under the Arizona statutes at issue here is categorically a crime of domestic violence.